**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| O'REILLY AUTO ENTERPRISES, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Court No:  2024-cv-09274 |
| | ) | |
| CITY OF HARVEY, ILLINOIS; | ) | **JURY TRIAL DEMANDED** |
| CHRISTOPHER J. CLARK; and | ) | |
| CAMERON BIDDINGS; | ) | The Honorable Manish S. Shah |
| | ) | |
| Defendants. | ) | |

<u>**PLAINTIFF'S BRIEF IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION**</u>

Plaintiff, O'REILLY AUTO ENTERPRISES, LLC ("O'Reilly"), by counsel, pursuant to order of the court [DE 16], submits its Brief in support of its Motion for Preliminary Injunction as follows:

**I. Background**

The City of Harvey, Illinois ("Harvey"), is a municipality in Cook County, Illinois, with the statutory power to "pass all ordinances and make all rules and regulations proper or necessary, to carry into effect the powers granted to municipalities, with such fines or penalties as may be deemed proper." 65 ILCS 5/1-2-1. Pursuant to this power, Harvey enacted Section 5-02-065 of its Municipal Code, which provides:

> **5-02-065 Suspension, revocation, or refusal to issue a business license for nonpayment.**
>
> A.     No initial or renewal license shall be issued to any person if:
>
> 1.   Such applicant has any outstanding fees, fines, assessments, penalties or taxes owed to the city for which the period granted for payment has expired; or

1

    2.   ***If the premises to be licensed has past due and/or delinquent real estate taxes for such property***, unless the property is exempt from taxation.

B.    The licensee and the licensed premises must meet the eligibility requirements for an initial or renewed business license throughout the license term. ***The city may suspend or revoke a business license if the licensee or the licensed premises fails to maintain eligibility for a business license.***

C.    If the initial or renewal license is denied for reasons stated hereunder, the license or renewal applicant may appeal such a decision pursuant to the hearing procedures in Section 5-02-120.

(emphasis added).

Section 5-02-120 of the Harvey Municipal Code further provides:

**5-02-120 Suspensions of license and hearings on license violations, fines, suspensions, and/or revocations.**

. . .

B.    Any license or permit issued under this chapter or any amendments thereto may, by the mayor, or his designated hearing officer, be suspended for a period of time not to exceed thirty (30) days or less, or it may be revoked indefinitely for any violation by the licensee or permittee of the ordinance provisions relating to the license or permit, subject matter of the license or permit, to the premises occupied, or for activities being carried on at the premises that do not fall within the purview of the license or permit granted.

C.    Within three (3) days after the suspension period of the license or permit has expired, or within ten (10) days of the initial revocation of the license or permit, the mayor, or his designated hearing officer, shall give notice to the holder or holders of the license or permit that a hearing will be held at a designated hour at the City Hall to hear evidence and take testimony relative to the facts and circumstances surrounding the suspension or revocation; and a decision shall be rendered by the mayor, or his designated hearing officer, regarding the reinstatement, the impositions of fines, and/or the permanent revocation of the suspended or revoked license or permit within five (5) business days following the hearing. Suspension or revocation of a license or permit may be in addition to any fine imposed under other provisions of this code. If the mayor, or designated hearing officer, fails to take steps to hold a hearing, the suspended or revoked license or permit shall be automatically reinstated following the period of the initial suspension. ***The temporary suspension shall take effect the day following the receipt by the licensee or permittee of a letter sent from the office of the mayor by certified mail setting forth the reasons for the suspension and the period of such suspension.*** Notices for hearing shall be sent by the office of the mayor by certified mail to the licensee or permittee. The notices required under this section may be made by

personal delivery to the licensee or permittee with an acknowledgement of receipt by the licensee or permittee.

(emphasis added).

O'Reilly is a nationwide retailer that operates a store in Harvey at 14921 Dixie Highway ("the Store"). (McDannold Aff., Exh. to Cplt.) O'Reilly operates the Store as a tenant of one unit on real estate consisting of multiple units ("the Property"), each a separate lot with a separate property identification number (PIN). (*Id.*) All lots on the Property are owned by Harvey Shopping Center, LLC ("the Landlord"). (*Id.*) Under O'Reilly's lease with the Landlord, the Landlord is responsible for paying property taxes on the entire Property. (*Id.*)

On December 14, 2022, the Landlord filed a lawsuit against Harvey in the Circuit Court of Cook County, Chancery Division, under Case Number 2022 CH 12050 ("the Chancery Action"), alleging that it entered into an Economic Incentive and Public Private Partnership Agreement (the "Partnership Agreement") with Harvey to redevelop the Property where the Store is located, and that pursuant to the Partnership Agreement, Harvey agreed to pay delinquent back taxes up to $2.53 million but failed to pay any of the property taxes. The Chancery Action remains pending.

Since at least 2014, O'Reilly annually applied for and received valid business licenses from Harvey. (Amd. Cplt, Exh. A.) For each year, O'Reilly submitted its business license renewal applications to Harvey by UPS, which Harvey always accepted. On May 23, 2023, Harvey issued O'Reilly a valid business license, signed and certified by its mayor, Defendant Christopher J. Clark ("Mayor Clark"), which was due to expire on April 30, 2024 (the 2023-2024 Business License). (*Id.*)

On April 25, 2024, before the expiration of the 2023-2024 Business License, O'Reilly timely submitted a complete application for renewal of its license with the proper authority of Harvey. (Amd. Cplt., Exh B.)

3

On July 1, 2024, O'Reilly received a citation from the City of Harvey alleging that O'Reilly was operating without a business license in violation of Section 5-02-170 of the Harvey Municipal Code. However, on July 24, 2024, Harvey dismissed the citation upon O'Reilly showing that it timely submitted its application in April 2024 and resubmitted its complete renewal application on July 12, 2024 and paid all fees.

In fact, on July 12, 2024, a representative for O'Reilly hand delivered a new license renewal application with complete information as required by Section 05-02-010 and a check for $714.00 for fees. (Amd. Cplt. Exh. C.) Harvey informed O'Reilly's representative that the total amount of fees due was $765.79. O'Reilly's representative paid the balance of $51.79 for the fees with a credit card. Harvey accepted O'Reilly's application and payment for the business license and gave O'Reilly a receipt. (Amd. Cplt., Exh. D.) Harvey informed O'Reilly that it would receive its business license in the mail. However, Harvey again failed to act on O'Reilly's business renewal application.

On September 12, 2024, O'Reilly received another citation from Harvey alleging that it was operating without a business license in violation of Section 5-02-170 of the Harvey Municipal Code. O'Reilly contested this citation, which remains pending.

However, before O'Reilly could even be heard on the new citation, Mayor Clark initiated a series of emails between September 18 and 24, 2024, in which he demanded as a condition for O'Reilly maintaining its business operations in Harvey that O'Reilly execute an agreement with Harvey under which it would pay Harvey $20,000 as a fine – not as payment – for delinquent property taxes owed by the Landlord for the entirety of the Property.

O'Reilly objected, and Mayor Clark on September 24, 2024, responded that O'Reilly could either pay the $20,000 or be fined $2,500 per day retroactively for five months for operating the

4

Store without a business license, and gave O'Reilly until the end of the day on September 27, 2024, to decide.

Without any prior notice, on September 30, 2024, the Harvey police, at the direction of Mayor Clark and Harvey Police Chief Cameron Biddings ("Chief Biddings"), placed locks on all units on the Property, including the Store, placed concrete blocks in front of the Store, and stationed a patrol outside of each unit, preventing all ingress to and egress from each unit, including O'Reilly's Store.

As a result of this conduct, O'Reilly could not access or conduct business in its Store. O'Reilly then moved this Court for and received a temporary restraining order ("TRO") on October 3, 2024. [DE 10]. The Court ordered Harvey, and any agent or employee of Harvey and any person in active concert with Harvey, "to remove the barriers it placed at [O'Reilly's] premises that prevent [O'Reilly] from accessing its rental unit." [DE 10]. Despite numerous requests from O'Reilly on October 3, 2024 for Harvey to remove its barriers, Harvey did not remove the barriers and comply with the TRO until October 4, 2024.

In the TRO, the court stated that it did not decide at that point "whether plaintiff has a license to operate its business and does not enjoin the City of Harvey from enforcing its municipal code *through any existing financial penalty structure along with the procedural mechanism for plaintiff to contest any effort* to impose a penalty on the grounds of operating a business without a license." [DE 10] (emphasis added). Later in the evening on October 4, 2024, without following any procedural mechanism in the Harvey Municipal Code, Harvey placed a "Cease and Desist Order" on the front door of O'Reilly's store wrongfully alleging that O'Reilly "is in violation of the City of Harvey's Municipal Code and has been closed by the planning department."

On October 23, 2024, Harvey held a hearing before an administrative law judge on the ordinance violations against O'Reilly. During the hearing, O'Reilly contended, *inter alia,* that the City of Harvey never acted on O'Reilly's license renewal application and therefore O'Reilly's 2023-2024 business license remained valid and effective. On October 29, 2024, Harvey sent a letter to O'Reilly, informing O'Reilly for the first time that its business license renewal application was denied for "property taxes".[1]

## II. Standard

"The party seeking a preliminary injunction bears the burden of showing that it is warranted." *Speech First, Inc. v. Killeen*, 968 F.3d 628, 637 (7th Cir. 2020). "A party seeking a preliminary injunction 'must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest.'" *Lukaszczyk v. Cook Cnty.*, 47 F.4th 587, 598 (7 th Cir. 2022) (quoting *Winter v. NRDC, Inc.*, 555 U.S. 7, 20 (2008)). "Balancing the equities" entails "weighing the harm to the moving party if the requested injunction is denied against the harm to the nonmoving party and the public—including third parties—if it is granted." *Finch v. Treto*, 82 F.4th 572, 578 (7th Cir. 2023).

## III. Argument

O'Reilly challenges Defendants' actions as violating two constitutional provisions: the Excessive Fines Clause of the Eighth Amendment and the Due Process Clause of the Fourteenth Amendment. O'Reilly addresses each in turn.

---

[1] On October 31, 2024, a copy of a denial letter dated October 29, 2024 from Harvey to O'Reilly was forwarded to O'Reilly's undersigned counsel. A true and correct copy of the October 29, 2024 denial letter is attached to this Brief as Exhibit A.

A.    **Harvey's enforcement of Section 5-02-065(A)(2) of its Municipal Code violates the Excessive Fines Clause of the Eighth Amendment.**

The Eighth Amendment provides, "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. CONST., Amend. VIII. The Excessive Fines Clause is incorporated against the States under the Fourteenth Amendment. *Timbs v. Ind.*, 586 U.S. 146, 150 (2019).

> For good reason, the protection against excessive fines has been a constant shield throughout Anglo-American history: Exorbitant tolls undermine other constitutional liberties. Excessive fines can be used, for example, to retaliate against or chill the speech of political enemies . . . . Even absent a political motive, fines may be employed "in a measure out of accord with the penal goals of retribution and deterrence," for "fines are a source of revenue," while other forms of punishment "cost a State money."

*Id.* at 153-54 (quoting *Harmelin v. Mich.*, 501 U.S. 957, 979 n.9 (1991)) (other internal citations omitted). As the Ninth Circuit noted, this holding in *Timbs* "affirmatively opens the door for Eighth Amendment challenges to fines imposed by state and local authorities." *Pimentel v. City of Los Angeles*, 974 F.3d 917, 921-22 (9th Cir. 2020).

Although no controlling authority dictates so, this court has held, "Since corporations and individuals are equally capable of holding property, they are both subject to abuses of state power relating to the inequitable deprivation of such property . . . there is little reason to assume that corporations are not entitled to the protection of the Excessive Fines Clause . . . ." *United States ex rel. Tyson v. Amerigroup Ill., Inc.*, 488 F. Supp. 2d 719, 743 (N.D. Ill. 2007); *see also*, *Browning-Ferris Indus. v. Kelco Disposal*, 492 U.S. 257, 285 (1989) (O'Connor, J., concurring in part and dissenting in part) ("If a corporation is protected by the Due Process Clause from overbearing and oppressive monetary sanctions, it is also protected from such penalties by the Excessive Fines Clause.")

7

"The Excessive Fines Clause of the Eighth Amendment 'limits the government's power to extract payments . . . as punishment for some offense.'" *Stop Ill. Health Care Fraud, LLC v. Sayeed*, 100 F.4th 899, 906 (7th Cir. 2024) (quoting *Austin v. United States*, 509 U.S. 602, 609-10 (1993)). "[C]ivil sanctions can constitute punishment, and therefore are subject to the limitations of the Excessive Fines Clause, if they serve, at least in part, retributive or deterrent purposes." *Towers v. City of Chicago*, 173 F.3d 619, 624 (7th Cir. 1999) (citing *Austin*, 509 U.S. at 610). By contrast, "purely remedial sanctions are not subject to Eighth Amendment scrutiny." *Grashoff v. Adams*, 65 F.4th 910, 916 (7th Cir. 2023).

1. **The fines provided by the Harvey Municipal Code and the payment demanded by Mayor Clark are retributive and deterrent, not remedial.**

The $2,500 per day fines are designed to be both retributive and deterrent, as Harvey explicitly identifies them as a "fine" and a "penalty:"

> Every person who operates a business without a license as required by this chapter, or who opens a business for the purpose of operating a business, shall be fined not less than two hundred fifty dollars ($250.00) and not more than two thousand five hundred dollars ($2,500.00) for each day he operates such business without a license, or if the door is opened for the purpose of operating a business. This penalty shall be in addition to any other penalty provided under the municipal code.

Harvey Mun. Code § 5-02-170(A). Nothing in this provision indicates any remedial purpose.

Similarly, the $20,000 payment demanded of O'Reilly by Mayor Clark is likewise retributive and deterrent because he presented it as an alternative to the punitive $2,500 daily fine and did not link that amount to any sums claimed to be lost by the city. It was at best a proposal to settle retroactive fines that Mayor Clark incorrectly claimed O'Reilly owed Harvey for operating without a business license.

Finally, the fine Harvey seeks to collect for operating without a business license results solely from the Landlord's tax delinquency on the Property on which O'Reilly's Store lies –

8

taxes it is not responsible to pay.[2] The revocation of O'Reilly's license constitutes a punitive deprivation of property in this regard (see § III.B *infra*), but even beyond this, the fine, while facially for operating without a business license, is inextricably linked to the property tax status of the Property, which invokes the Eighth Amendment's culpability analysis.

### 2. Section 5-02-065 imposes punishment independent of any culpability by O'Reilly, in violation of the Eighth Amendment.

In the criminal context, the Supreme Court established in *Enmund v. Florida*, 458 U.S. 782 (1982) that the Eighth Amendment requires that the severity of punishment must be tied to the offender's personal culpability. 458 U.S. at 798. There, the offender, who only drove two others to a house where the others ended up committing murder, was convicted and sentenced to death under a Florida statute that defined aiding and abetting a robbery during which a murder was committed as first-degree murder. *Id.* at 783-86. In holding that the sentence violated the Eighth Amendment, the Court held, "It is fundamental that causing harm intentionally must be punished more severely than causing the same harm unintentionally." *Id.* at 798 (internal quotation omitted). Because the offender "did not kill or intend to kill[,] . . . his culpability is plainly different from that of the robbers who killed; yet the State treated them alike" and therefore the sentence "was impermissible under the Eighth Amendment." *Id.*

The Court later elaborated, "The heart of the retribution rationale is that a criminal sentence must be directly related to the personal culpability of the criminal offender." *Tison v. Ariz.*, 481 U.S. 137, 149 (1987); *see also*, *Graham v. Fla.*, 560 U.S. 48, 71 (2010) (citing *Tison*).

---

[2] While Harvey claims to have denied O'Reilly's license renewal application on October 29, 2024, the factual record shows that Harvey actually treated O'Reilly's business license as revoked without due process, as Harvey shut down O'Reilly's store and began prosecuting O'Reilly with fines long before Harvey took any action on O'Reilly's business license renewal application.

9

Two federal courts of appeals have extended this rationale to the context of civil forfeiture. In *von Hofe v. United States*, 492 F.3d 175 (2d Cir. 2007), the Second Circuit addressed a civil *in rem* forfeiture action against a married couple's residence on which the husband conducted a concealed marijuana-farming operation. 492 U.S. at 179-80. While the court affirmed forfeiture of the husband's one-half interest in the residence, it found forfeiture of the wife's one-half interest violated the Eighth Amendment's Excessive Fines Clause because she "bears minimal blame for the criminal activity that occurred at [the residence]" with the record "devoid of any evidence indicating her use of drugs or her involvement in any criminal activity whatsoever" or that she "encouraged or promoted the offensive conduct occurring at [the residence]." *Id.* at 188.

In *United States v. Ferro*, 681 F.3d 1105 (9th Cir. 2012), the Ninth Circuit address a similar fact pattern. There, the government initiated a civil *in rem* forfeiture action confiscating a defendant's collection of 865 firearms, plus ammunition, explosives, and other military weaponry. 681 F.3d at 1107-08. The defendant's wife challenged forfeiture of her ownership interest in certain collectible guns as violating the Excessive Fines Clause, and the district court agreed. *Id.* at 1109-10. The Ninth Circuit cited *von Hofe* and noted that it "provides the correct approach" requiring a culpability analysis for challenges to forfeiture claims.. *Id.* at 1116-17.

Both *von Hofe* and *Ferro* apply the culpability analysis first articulated in *Enmund* to civil actions under the Excessive Fines Clause. That analysis directly applies here. Section 5-02-065 of Harvey's Municipal Code provides for denial or revocation of a business license "If *the premises to be licensed* has past due and/or delinquent real estate taxes for such property, unless the property is exempt from taxation." (Emphasis added). The ordinance applies regardless of whether the license holder or applicant is the party responsible for paying taxes

on the "premises to be licensed." In other words, there is no link between culpability and punishment under this ordinance.

Here, O'Reilly is operating its Store as a Tenant. It has no responsibility to pay property taxes for the Property where its Store stands – either as owner or under its lease with the Landlord. Yet Harvey's ordinance makes no distinction between O'Reilly and its Landlord; it authorizes revocation of O'Reilly's business license – resulting in $2,500 daily fines – based on circumstances it has no ability to control. As a result, not only does Harvey's enforcement of Section 5-02-065 of its municipal code violate the Excessive Fines Clause, but the ordinance itself as written cannot withstand that scrutiny because it makes no provision for a license holder's culpability.

**B.      Harvey's actions against O'Reilly violate the Due Process Clause of the Fourteenth Amendment.**

"The Fourteenth Amendment explicitly prohibits state governments from depriving persons of 'life, liberty, or property, without due process of law.'" *Manistee Apts., LLC v. City of Chi.*, 844 F.3d 630, 633 (7th Cir. 2016) (quoting U.S. Const. amend. XIV, § 1). 42 U.S.C. § 1983 grants citizens "a cause of action to vindicate this constitutional right to procedural due process," and to prove such a claim "a plaintiff must demonstrate (1) a cognizable property interest; (2) a deprivation of that property interest; and (3) a denial of due process." *Id.*

**1.      O'Reilly has a protected property interest in both its leasehold and its existing business license.**

O'Reilly, first of all, has a leasehold interest in its Store. It is well-established that a leasehold interest constitutes a "property interest" sufficient to invoke Fourteenth Amendment Due Process rights. *See*, *Dept. of Hous. and Urb. Dev. v. Rucker*, 535 U.S. 125, 135 (2002)

11

(citing *Greene v. Lindsey*, 456 U.S. 444 (1982)); *see also*, *Dyson v. City of Calumet City*, 306 F. Supp. 3d 1028, 1042 (N.D. Ill. 2018) (applying the rule to a commercial leasehold).

Less cut-and-dry is O'Reilly's business license. A license may constitute a property right if it is "securely and durably the licensee's" under relevant state or local law. *Reed v. Vill. Of Shorewood*, 704 F.2d 943, 948 (7th Cir. 1983), *overr'd in part on other grounds*, *Brunson v. Murray*, 843 F.3d 698, 710-14 (7th Cir. 2016). If the license is "revocable during its term only for cause" and the law "treats a refusal to renew . . . as equivalent to revocation, entitling the licensee 'to all the protections, procedural and substantive, of the revocation process,'" then the licensee has a property right in the license. *Club Misty, Inc. v. Laski*, 208 F.3d 615, 618 (7th Cir. 2000) (quoting *Reed*, 704 F2d at 949).

Harvey's ordinances clearly treat a business license as a property right. It establishes procedural safeguards for the suspension of a business license, including a requirement for notice and a hearing before a hearing officer designated by the mayor. Harvey Mun. Code § 5-02-120 (quoted *supra*). These procedures apply equally to denials of initial or renewal licenses. *Id.* § 5-02-065(C). Significantly, it also provides that if the city "fails to take steps to hold a hearing, the suspended or revoked license or permit shall be automatically reinstated . . ." and that if the city does not act on the initial license application for 30 days, the license is effective until the city takes action. *Id.* §§ 5-02-120, 5-02-010. The ordinances also establish the same standards for suspension/revocation and renewal as for the initial qualification for the license. *Id.* § 5-02-065(B). And lastly, the ordinances set forth a list of concrete criteria to qualify for the license, including minimum insurance requirement (§ 5-02-075), not maintaining a nuisance (§ 5-02-100), and posting the license (§ 5-02-130).

Because the city makes no distinction between initial application, renewal, and suspension/revocation of an existing license, guarantees substantive and procedural hearings for denial, suspension, and revocation of a business license, and specifies criteria for the license rather than placing it at city official's discretion, a Harvey business license has all the hallmarks of a property right identified by the Seventh Circuit in *Reed* and *Club Misty*.

Harvey has attempted to draw an analogy to *Dyson v. City of Calumet City*, 306 F. Supp. 3d 1028 (N.D. Ill. 2018), but in that case "the City refused to issue a business license until the zoning issue was addressed." 306 F. Supp. 3d at 1038. Thus, the business license was secondary to the city's denial of a special exception, which was not a property right because it lay within the sole discretion of the city's zoning board and council. *Id.* at 1038, 1041. In fact, the plaintiff there "fail[ed] to identify any ordinance that dictates when and how a business license must be issued." *Id.* at 1041. The ordinances and fact scenario here are entirely different; no discretionary zoning process is involved and Harvey's ordinances guarantee protections that characterize property rights as recognized by the Seventh Circuit. Thus, *Dyson* is of no persuasive value here.

### 2. Harvey's actions deprived O'Reilly of its protected property interest without due process of law.

"The hallmarks of procedural due process are notice and an opportunity to be heard." *Pugel v. Bd. of Trs. of the Univ. of Ill.*, 378 F.3d 659, 662 (7th Cir. 2004). "Due process . . . 'calls for such procedural protections as the particular situation demands;' therefore, "[t]o evaluate the adequacy of procedural protections in a particular situation, [a court] consider[s] 'first, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest.'" *Id.* at 663 (quoting *Gilbert v. Homar*, 520 U.S. 924, 930 (1997)).

13

Here, Harvey sent its police force without prior notice and blocked everyone – including O'Reilly's own employees and agents – from entry, not just with locks, but with cement barricades and police presence, too. *Cf., Reed*, 704 F.2d at 949 ("But 'deprive' in the due process clause cannot just mean 'destroy.' If the state prevents you from entering your house it deprives you of your property right even if the fee simply remains securely yours.") Nor was O'Reilly offered any opportunity to be heard before Harvey took this drastic action. Harvey has flouted both "hallmarks" of due process.

At the initial TRO hearing, Harvey asserted that its actions lay within its police power. However, "[t]he due process inquiry requires [the court] to balance the [government]'s legitimate interest in protecting its citizens . . . against plaintiffs' interest in receiving notice and a hearing . . . ." *Pierce v. Village of Divernon*, 17 F.3d 1074, 1079-80 (7th Cir. 1994). The police power may at times justify emergency action, but here nothing about O'Reilly's auto parts business posed an immediate or serious risk to public health or safety. Harvey did not cite any such public health or safety risk as its basis for blocking access to the Store. Instead, its only basis for doing so without notice or a hearing was its assertion that O'Reilly lacked a business license – a situation that it argued -- incorrectly -- had been the case for months. Assuming for sake of argument the truth of that assertion, the sudden and overwhelming use of force does not justify the deprivation of O'Reilly's right to notice and an opportunity to be heard.

An action is currently pending to address the license issue. Had Harvey limited its actions to the judicial enforcement action, due process would be satisfied and action from this court would be unnecessary. But Harvey stepped beyond those bounds when it used its police force to lock and barricade O'Reilly out of its own store without notice or an opportunity to be heard. Harvey continues to violate due process (and the Court's TRO) by affixing a "cease and desist" order to

O'Reilly's building proclaiming that "This business is in violation of the City of Harvey's municipal code and has been closed by the planning department." For these reasons, the existing TRO should be converted into a preliminary injunction.

## C. All remaining injunction factors weigh in favor of the preliminary injunction.

The above arguments all establish O'Reilly's likelihood of success on the merits. Regarding the remaining factors, Harvey's drastic action regarding the Store establishes that O'Reilly will suffer irreparable harm, as its property interest is being interfered with based on an unconstitutional ordinance and in violation of its due process rights. Balancing the equities, the harm O'Reilly suffers without the injunction drastically outweighs any harm to Harvey with the injunction. Harvey has other avenues to seek enforcement even if its ordinances withstand constitutional scrutiny. Without an injunction, by contrast, O'Reilly remains at the mercy of Harvey, its mayor, and its police force, who have cut off access to its property without any warning or chance to be heard. And finally, the public interest is always served by enjoining unconstitutional laws. *See*, *ACLU v. Alvarez*, 679 F.3d 583, 589-90 (7th Cir. 2012) ("the balance of harms normally favors granting preliminary injunctive relief because the public interest is not harmed by preliminarily enjoining the enforcement of a statute that is probably unconstitutional").

## IV. Conclusion

For all the foregoing reasons, this Court should grant a preliminary injunction prohibiting Defendants from (1) enforcing Section 5-02-065 in violation of the Excessive Fines Clause of the Eighth Amendment, and (2) blocking O'Reilly's access to or business operation in the Store without following the procedural safeguards outlined in its own ordinances.

4869-1937-2020, v. 1

Respectfully submitted,

O'REILLY AUTO ENTERPRISES, LLC

By:___/s/ Carlos A. Vera_____
        One of Its Attorneys

Joseph R. Marconi – ARDC #1760173
Carlos A. Vera – ARDC #6312461
Adam J. Sedia – ARDC #6318987
JOHNSON & BELL, LTD.
33 West Monroe Street
Suite 2700
Chicago, Illinois 60603
312.372.0770 (T)
marconij@jbltd.com
verac@jbltd.com
sediaa@jbltd.com

*Attorneys for Plaintiff,*
  *O'Reilly Auto Enterprises, LLC*

16

4869-1937-2020, v. 1

## **CERTIFICATE OF SERVICE**

I hereby certify that on October 31, 2024, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all attorneys of record.

*/s/ Carlos A. Vera*

4869-1937-2020, v. 1