**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| O'REILLY AUTO ENTERPRISES, LLC | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:24-cv-09274 |
| | ) | |
| CITY OF HARVEY, ILLINOIS; | ) | Hon. Manish S. Shah |
| CHRISTOPHER J. CLARK; and | ) | |
| CAMERON BIDDINGS; | ) | JURY TRIAL DEMANDED |
| | ) | |
| Defendants. | ) | |

# EXHIBIT E

CITY OF HARVEY
ADMINISTRATIVE HEARING
COOK COUNTY, ILLINOIS

| | | |
|---|---|---|
| CITY OF HARVEY, | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | CASE NOS.    C1644-001222, |
| | ) |                C1646-001370, |
| | ) |                C1646-001499 & |
| | ) |                C1646-00 1500 |
| O'REILLY AUTO PARTS, | ) | |
| **Respondent.** | ) | |

## DECISION

### I.     INTRODUCTION

This matter was called for hearing before this Administrative Hearing Officer on Wednesday, October 23, 2024. Both parties were represented by counsel. The subject business is located at 14921 Dixie Highway in Harvey, Cook County, Illinois. Respondent's counsel made an oral Motion to Set Aside a prior Default Judgment that had been entered against Respondent. Plaintiff's counsel had no objection to that motion and this Hearing Officer entered an Order vacating the prior default judgement. This matter then proceeded to hearing.

During opening statements, counsel for the city explained that City of Harvey Ordinances state that if property taxes are in arrears for two years, no business license will be issued for any business at that property. Respondent is a tenant at a property owned by Harvey Shopping Center, LLC. On April 25, 2024, the business license of Respondent expired. Respondent applied for a business license for 2024-25 on July 14, 2024. Respondent is not eligible for a business license due to the tax deficiency, yet they continued to operate without a business license and the city is now seeking daily fines against Respondent.

Respondent's attorney, during his opening statement stated that Respondent has a business license to operate. They had a business license during 2023-24 and Respondent timely submitted its application in April of 2024 by UPS. Until Respondent received a citation violation notice, it

1



was not informed that its application was not accepted. At a previous July administrative hearing date, the district manager appeared and someone from the city said they received the application, and it was worked out and that July citation was dismissed.

Counsel then cited city ordinance 5-02-010 stating that Respondent complied with the April 30th deadline for a completed business application. Because the city did not act on that completed application within 30 days, the ordinance states that the license will continue in effect until the city acts on the license renewal application. As to 5-02-065, the tax provision, it states that the matter can be appealed according to 5-02-120 but Respondent never received notice that its application was rejected. On September 30, 2024, without notice and without hearing, the city blocked the entrances with cement blocks, changed locks and put stickers (placards) on the business to cease and desist operations. A federal Judge then granted a TRO to remove the cement blocks.

Lastly as to the citations for removing the placards, counsel doesn't believe that employees of Respondent removed the first placard. After its removal, another cease-and-desist placard was placed on the property the following Monday. The second placard is still there.

### TESTIMONY OF INSPECTOR SHERIDAN

The Plaintiff, City of Harvey called as its first witness, Mr. Joseph P. Sheridan, who was previously sworn. Mr. Sheridan testified that his role involves building inspection duties, including property, building and fire inspections. Mr. Sheridan testified that on September 12, 2024, he was present and took photos of the business known as O'Reilly Auto parts on Dixie Highway (Group Exhibit 1, 1A through 1F.). He testified that the business was operating and there were people inside of the store. He is familiar with the property and business. His *first inspection* was on that date, September 12, 2024. He testified that previously, he was informed that the business did not have a license by his supervisor. The renewal period he thought ended on June 1st or the end of May. He is not familiar with the business records (of the City of Harvey).

On September 12, 2024, when he visited the property, he observed customers inside the business. Exhibit 1D depicts a photo of Respondent's business license that is not a current license. The old one had expired. Exhibit 1E depicts customers going into the store as does Exhibit 1F.

He then wrote citations for the business on that same date. He is not familiar with any settlement agreement between the property owner and the City of Harvey. He is familiar with the

2

business being shut down for a few days consistent with Respondent's Counsel's opening statement.

On a previous date, September 5, 2024, he also visited the site and observed Respondent open for business. Respondent did not have a valid business license on that date. Between September 5th through today's date (October 23, 2024) Mr. Sheridan testified that he visited the property three times and the business was open each time. The last visit was in early October. He has never seen a valid business license for Respondent. Mr. Sheridan testified that he is not familiar with the lease between Harvey Shopping Center, LLC., and Respondent.

Mr. Sheridan did not recall if he was present for the hearing on the July citation. He did not have conversations with Respondent's employees at the store when he was there. He testified that to issue a citation he puts it into a computer, and it is mailed out to the business owner. He does inspections for license renewals that include electrical, plumbing, HVAC and checking that it is clean and safe. He has never been requested to do that type of inspection at Respondent's business.

On September 30, 2024, he put another sticker (cease-and-desist placard) on the door and identified Exhibit 3 as depicting that. He also took that photo. He then testified to Group Exhibit 4(A-D) that he also took on that date. He identified the placard in Exhibit 1F, being near a man in a white shirt in the photo and testified that he put one on the back door also.

He testified that he did not recall the exact date of the cease-and-desist placard but identified Exhibit 2 as a photo of the placard dated October 7, 2024, that he took. He testified that on October 7, 2024, he visited the store and found the placard had been removed from the front door. He is not aware of anyone from the City of Harvey removing it. He then spoke with his supervisor and installed another cease-and-desist placard at that time. After he took the photo, he told the manager what he was doing. He did not tell him he could not remove it. Mr. Sheridan placed the cease-and-desist placard on the front door of the business.

He then identified Exhibit 5 as a photo depicting the newly installed placard with a time stamp of 5:11 pm. He did that because the store did not have a business license and to let people know that the store was closed. Respondent's neon sign with the word "Open" was illuminated at that time.

On October 7, 2024, he did not have any information that Respondent had obtained a valid business license. He did learn that there were delinquent taxes owed at the property. He did not learn that the property was exempt from property taxes. He then testified that he has never been

3

served with an appeal of a denial of a license for 2024-2025. Lastly, he testified that he is familiar with Harvey Ordinance 5-02-065 that suspends or revokes a license for nonpayment of property taxes. Everything he testified to occurred in the City of Harvey, County of Cook.

On cross-examination, Inspector Sheridan testified that he did not review the business license application of Respondent and has no knowledge of the application. He also has no knowledge if the city responded to the application. He testified that his supervisor is named Lonnie and he does not know his last name. He does not know if Lonnie looked at the business application. Inspector Sheridan has never reviewed a business application. At the property he never saw a license for 2023-24 displayed when he went into the store, one time. He testified that the cease-and-desist placard was missing from the front door on October 7, 2024, when he visited. His supervisor Lonnie told him to put the placard back up on the property. The placard was posted when the property was blocked by the city.

He has not visited the store since the cease-and-desist was replaced. It was placed on the outside of the store. He also placed the cease-and-desist placard on other stores in the shopping center. He does not remember if any of those were removed.

As to the case at hearing today, he issued two complaints. He does not know about any other complaints and cannot speak to if others have been sent notices of other complaints. He does not know if Respondent owns the building or property. He doesn't know if taxes are delinquent, and he doesn't know if they were delinquent during 2023-24.

### TESTIMONY OF BRIDGET ALLEN

Ms. Bridget Allen was sworn in previously. She testified that she is the Administrative Assistant for the City of Harvey Building & Inspectional Services. She works at the public window for business applications, and she double-checks if the applications are approved. If an application is approved, then it is forwarded to the Director and to the Mayor.

From March until May 1st each year, the city accepts business applications that are paid for. After May 1st, the city is entitled to issue citations. She is familiar with O'Reilly Auto Parts (Respondent) located at 14921 South Dixie Highway, Harvey, Illinois. She testified that the city did not receive an application from O'Reilly before May 1, 2024, submitted via mail. She did not recall receiving it before May 1st.

4

She identified Exhibit 6 as the business application of Respondent. She saw it but does not remember when she saw it for the first time. She testified that it is her role to go through the application forms. She identified a signature on Respondent's business application for Mr. Fletcher for O'Reilly, dated July 18, 2024. She testified that wrongful information could result in daily fines of $2500.

She testified that the application signature dated July 18th was the first application she saw for Respondent. She is familiar with Harvey Municipal Code 5-02-065. Part of her review of an application is to check the PIN from the application. She performed an examination of the entire plaza (where Respondent's business is located) and printed out a 20-year tax history.

Ms. Allen identified Exhibit 7 as a delinquent tax form from the Cook County Recorder's Office. The document shows that the property owner (where Respondent's business is located) owes property taxes for 2021-2019 and through 2021. She next identified Exhibit 8 which is a delinquent tax form from the Cook County Recorder showing delinquent property taxes for the location Respondent is located.

She recalls speaking with someone from O'Reilly in June of 2024 about a submitted application that was denied because there was no identification submitted by the applicant. The denial would have been for not having the proper documentation. She notified a male and does not know who he was.

When an application is denied and a business does not have a valid license, a violation will be issued. A violation to Respondent was issued in July 2024. She denied any settlement agreement was made with Respondent and the city to her knowledge.

She then described how the DACRA computer system generates the ticket, and it is sent by registered mail. She has never been notified of an appeal of a denial of a business license by Respondent. She does not know if Respondent satisfied all of the requirements for a business license. They have not complied with the tax delinquency because the property owner has not paid the property taxes to Harvey or Cook County.

On cross-examination, she was initially asked about her conversation with Ms. Davis before her cross-examination began. She testified that the conversation was about the process that she did not get to answer. She testified that Respondent had a valid business license from May 1, 2023, to April 30, 2024. She identified Exh A as that business license. She looked at the three most recent years of property tax payments when issuing the May 1, 2023, license.

Ms. Allen identified Exhibit 9 as a date stamp of July 12, 2024. The Building & Inspectional Services stamps it. July 10, 2024, is the correct date of the signature, not July 18, 2024, as she previously testified. She identified a copy of Mr. Fletcher's driver's license that was included with that July application.

As to notice, she testified that O'Reilly was given notice when first served with an ordinance violation. She identified Exhibit 10 as an Administrative Hearing document, that is the notice given. She admitted that the notice does not say that the application is being rejected. She stated that Inspector Joseph Sheridan has no authority with business license applications. She testified that on July 24, 2024, the District Manager for O'Reilly was in court (administrative hearing) and the order entered was Motion City Non-suit. (MCNS) on the complaint.

Ms. Allen stated that a business can apply after May 1st and if approved, there will be penalties. She stated that the July 1st violation/notice could not apply to a July 10th application. She does not know of any notice to Respondent regarding the July 10th application being denied.

She testified that business applications by mail are only allowed for out of state applicants. She never received a completed April application from Respondent. During her June conversation with an O'Reilly person, she was told by that person that Respondent sent it in April. She did not see it.

When an application is received, it is reviewed, maybe by her.

When she did receive the O'Reilly application in July, it was incomplete. She next identified Exhibit 11 as a UPS confirmation of Delivery to City Hall from O'Reilly dated April 26, 2024. She personally signed for the delivery. She does not recall ever giving rights of appeal to Respondent. Exhibit 12 is a letter from the City of Harvey to all businesses with unpaid property taxes. It would have been sent to O'Reilly via the United States Postal Service (USPS) from the Department of Building & Inspectional Services. The letter discusses settlement opportunities, but the city did not receive a response from O'Reilly.

Exhibit 13 is a letter sent out on May 18, 2023, also mailed to every single business in Harvey that would have included O'Reilly. After July 24, 2024, no one from O'Reilly came in to discuss why the license was not renewed. The license was never renewed.

After July 12, she does not remember sending a notice of denial. When the Exhibit 12 letter was sent on May 18, 2023, O'Reilly had a valid license. The Exhibit 12 letter does not have a date, it was sent to all business owners sometime in 2024. She is "99% sure, pretty positive."

She then identified Exh 14 which is the business license fee schedule for Harvey of $765. $714 check order and the rest as a credit card payment. Exh 9's last page is for a July 11, 2024, check for $714 for deposit. She testified that the application fee is not refundable. She did not know if a balance was refundable.

## TESTIMONY OF COREAN DAVIS

Ms. Davis was sworn in and testified that she has an MBA from Lewis University and an undergraduate degree from Northern Illinois. She is the City Administrator of Harvey. She has held that position for 1 ½ years. She oversees the day-to-day operations (of the city) including business licensing. She is familiar with the Respondent and has never had any discussions with Respondent regarding its business license renewal.

Harvey has a program for businesses to operate when there is delinquent property taxes owed. The business can enter into a settlement agreement with the city to continue to operate. She had settlement talks with O'Reilly, but O'Reilly never agreed to a settlement. O'Reilly did not file an appeal.

A federal court injunction Exhibit 15, specifically excluded any findings as to whether O'Reilly has a valid business license and did not enjoin the city from enforcement. The property where O'Reilly is located still has a property tax deficiency.

On cross-examination, Ms. Davis testified that there were settlement talks regarding a continuing business agreement with the property owner as well as Respondent. She testified that there is a court case pending with the property owner who claims that the city owes the property taxes. She testified that it was O'Reilly who reached out to the city regarding a settlement, but she does not know the exact date. Settlement negotiations are done through legal counsel.

Any settlement would require a significant payment, different payments. Exhibit 16 is dated September 16, 2024, and has an option for a business to pay a $20,000 fine and is checked by the applicant.

The city uses reasonable means to try and get the property owner to pay the property taxes. Section 6(a) states that reasonable efforts will be undertaken. It is sent by email and letter. She does not know the date and it is not by certified mail. She testified that the agreement would have been sent prior to the date on Exhibit 16 (September 16, 2024). The settlement talks involved representatives from O'Reilly.

Exhibits 1-15 were then admitted into evidence with no objection.

## TESTIMONY OF ADAM McDANNOLD

The defense called Mr. Adam McDannold, Business Manager for O'Reilly Auto Parts. He testified that Exhibit 17 is Respondent's business application to the City of Harvey dated April 25, 2024, and sent by UPS. He testified that he first learned that the license was not renewed for taxes in September 2024. He did not get notice stating it was not renewed but received an email regarding a $20,000 fee in the settlement agreement in September.

He believes O'Reilly first saw that document (agreement) in September 2024. When pressed as to whether it could have been before September, he said "or that time frame." He read the whole settlement agreement. Until September he was not aware that they did not have a valid business license. He lastly testified that he did not fully understand that the license would not be renewed.

## ARGUMENTS

Plaintiff City of Harvey argues that Respondent does not have a valid license. Respondent also had a cease-and-desist placard at its store because it did not have a valid business license. The ordinance is clear. Respondent and the City of Harvey had a settlement agreement in September and there are emails about that. It was clear by September that they were not getting renewed. There is a $2500 per day fine for the citation date onward. That is more than $50,000 owed to the city. As to the removal of the placard, the Respondent had actual and constructive notice and continued to operate the next day (after it was placed at the property). The city is seeking $2500 per daily fine from September 5, 2024, through today's date of October 23, 2024.

Respondent argues that there is no evidence that the application was not complete in April 2024. Section 5-2-010 of the ordinance applies when an application is filed. The April 2024 application was complete. There is no evidence otherwise. Under Section 010, the 2023-24 license remains valid. As to any settlement with the city, this is a property tax dispute with the property owner and the city tried to get Respondent involved in that dispute.

Respondent further argues that there is no due process here. The citation for violation is not a proper notice. An email for $20,000 is not proper notice. There is no document denying the business license application. 5-02-065(c) states if a license is denied, you can appeal. There has been no notice of denial and no denial here.

8

Section 5-02-120 addresses notice and there was never a hearing. Respondent had a valid license. The 2023-24 license is still valid. The city could have sent a denial by certified mail but did not do that. This is a due process violation and under the eighth amendment this would be an excessive fine without any culpability. Respondent seeks a finding of no liability.

Plaintiff in rebuttal argues that Ms. Allen did not testify that the April application was complete. She testified that Respondent's license application was filed late. Respondent received letters in 2023 and 2024 and had placards placed on their business yet claim that they didn't know. The settlement was voluntary, and they knew it. The fines in this matter are not oppressive. The city seeks a finding of liability.

This matter was then taken under advisement by this Hearing Officer.

Sometime after this matter was taken under advisement, Respondent's counsel sent an email with a document that it wished to have considered. Such a communication is completely improper.

Proofs were closed on October 23, 2024. Respondent failed to file a motion or otherwise seek to have this matter reopened for further presentation of evidence. The email attachment was not reviewed by this Hearing Officer and not considered in evaluating the evidence in this matter.

## DISCUSSION

To untangle this matter, a timeline is needed for the findings of fact in this case, and that is as follows:

May 18, 2023: Form Letter Sent to All businesses in Harvey re: Need to pay unpaid property taxes in general. Exhibit 13.

2023-24: A valid business license exists for O'Reilly Auto parts with an expiration of April 30, 2024. Exhibit A.

Early 2024: Form Letter Sent to All businesses in Harvey re: Need to pay unpaid property taxes in general. Exhibit 12.

April 25, 2024: A business license application is signed by the Business License Coordinator for O'Reilly. Exhibit 17.

April 26, 2024: Ms. Allen signs for UPS Delivery of the Application. Exhibit 11.

June 2024: Ms. Davis informs someone from O'Reilly that the application was incomplete for identification. Testimony.

July 1, 2024: City issues a citation for operating without a license. Exhibit 10.

9

July 10, 2024: Respondent prepares and signs a Second Application with proof of I.D. and proof of payment of that application. Exhibit 9.

July 14, 2024: The application is timestamped by the city's Department of Housing and Inspectional Services. Exhibit 9.

July 24, 2024: District Manager appears at the Administrative Hearing and represents that the April application was returned to them as incomplete, but O'Reilly has filed again. The city dismisses the violation. Exhibit 10.

September 5, 2024: Inspector Sheridan visits the property and observes that it is open for business. Testimony.

September 12, 2024: Inspector Sheridan revisits the property and observes that it is open for business and has posted its expired license from 2023-2024. He placed a cease-and-desist placard on the business. He did not have a conversation with any employees. That same date, he prepared citations for the property for operating without a valid business license. Testimony and Group Exhibit 1.

September 16, 2024: A Completed and Signed Settlement Agreement for O'Reilly Auto parts was executed by Mr. Gregg Bernstein for the business applicant. The agreement was checked for Option 1 that the Business would pay $20,000 on the effective date ("Fine"). Exhibit 16.

That agreement was never completed by the parties. Testimony

(There was no testimony as to who Mr. Bernstein is).

September 2024: Sometime before the September 16th written agreement date, Ms. Davis had settlement conversations with a representative of O'Reilly Auto Parts. Testimony.

September 2024: Sometime in this time frame, Mr. Adam McDannold learned of the proposed business continuation agreement and that the store did not have a valid business license. Testimony.

September 30, 2024: Inspector Sheridan revisited the property and put *another* cease-and-desist placard on the door. Testimony and Exhibit 3.

The photo exhibits for Inspector Sheridan's testimony are dated October 4, 2024.

10

September 30, 2024, or shortly thereafter: the city blocked access to the business with barricades.

October 3, 2024: The Respondent obtained a TRO from federal Judge Shah to remove the barricades. Judge Shah specifically ordered that he was not making any ruling as to the validity of Respondent's business license or enjoining the city from enforcing its municipal codes. Exhibit 15.

October 4: Business is open. Group Exhibit 4.

October 7, 2024: Inspector Sheridan revisited the property, and it was open for business. The placard had been removed. He replaced the placard and told the manager what he was doing. He did not visit the property after that date. Testimony and Exhibit 15.

## SECTION 5-02-065

The City of Harvey Ordinances contain provisions relating to the issuance of business licenses. The first to be addressed by this Hearing Officer is designated as Chapter 5-02-065, **Suspension, revocation, or refusal to issue a business license.** That ordinance provision states that:

A. No initial or renewal license shall be issued to any person if:

1. Such applicant has any outstanding fees, fines, assessments, penalties or taxes owed to the city for which the period granted for payment has expired; or

2. *If the premises to be licensed has past due and/or delinquent real estate taxes for such property, unless the property is exempt from taxation.* (italics added).

B. The licensee and the licensed premises must meet the eligibility requirements for an initial or renewed business license throughout the license term. The city may suspend or revoke a business license if the licensee or the licensed premises fails to maintain eligibility for a business license.

C. *If the initial or renewal license is denied for reasons stated hereunder, the license or renewal applicant may appeal such a decision pursuant to the hearing procedures in Section 5-02-120.* (Ord. 3484 § 3, 2024; Ord. 3458 § 1, 2022) (Italics added).

11

*See* City of Harvey Ordinance 5-02-065.

According to City of Harvey Ordinance 5-02-065-A(2), O'Reilly Auto Parts is not eligible for a business license. Through the testimony of Ms. Allen and through Exhibits 7 & 8, the city demonstrated that the property owner where Respondent's business is located owes hundreds of thousands of dollars in unpaid property taxes and they are delinquent. Although the exhibits demonstrate that several million dollars are owed, the Harvey Ordinance is concerned with the past two years of unpaid and delinquent taxes evidenced in the exhibits. The Respondent is not contesting those amounts but does point out that there is a separate lawsuit between the property owner and the city as to what entity owes the property taxes.

Cook County records currently demonstrate that the property owner owes the delinquent taxes and as such, Section 5-02-065 prohibits a business license from being issued at the property.

However, subsection (C) sets forth that if the initial or renewal license is denied for reasons stated hereunder, …the renewal applicant may appeal such a decision pursuant to the hearing procedures in Section 5-02-120.

Testimony and exhibits in this case demonstrate that Respondent was aware by September 2024 that a license would not be issued based upon delinquent property taxes being owed.

**Appeals Under Section 5-02-065**

Respondent next argues that because it did not receive notice and a right to appeal, its due process is being violated. Section 5-02-065(C) allows for an appeal from a denial of license for delinquent taxes at a property in accordance with Section 5-02-120 **Suspensions of license and hearings on license violations, fines, suspensions, and/or revocations.**

This section is not helpful to this Hearing Officer in that its procedures are addressed to suspensions, *et al.*, of a current license. Subject matter-wise it is not addressed to the nonrenewal of a license. However, since 5-2-065 allows an appeal under this section, its procedural process does apply.

The overriding issue in this case is that the City of Harvey Ordinances do not address notices for nonrenewal, denial or rejection of a business license renewal. There isn't any provision that requires the city to notify an applicant that its application is denied, incomplete or otherwise rejected. The provision for appeal is contained in City of Harvey Ordinance 5-02-120 **Suspensions of license and hearings on license violations, fines, suspensions, and/or revocations.** That section states:

12

A. The mayor as issuer of business licenses and as the liquor control commissioner for the issuance of liquor licenses shall have the power to designate a qualified hearing officer, an attorney licensed to practice law in the state of Illinois, in his stead, to act for the mayor in imposing license suspensions for violations of the terms of the license and to hear and rule upon all issues of license violations, fines, suspensions and revocations of any and all sorts as provided for in this title and the city's municipal code.

B. Any license or permit issued under this chapter or any amendments thereto may, by the mayor, or his designated hearing officer, be suspended for a period of time not to exceed thirty (30) days or less, or it may be revoked indefinitely for any violation by the licensee or permittee of the ordinance provisions relating to the license or permit, subject matter of the license or permit, to the premises occupied, or for activities being carried on at the premises that do not fall within the purview of the license or permit granted.

C. Within three (3) days after the **suspension period of the license or permit has expired**, or within ten (10) days of the initial revocation of the license or permit, the mayor, or his designated hearing officer, shall give notice to the holder or holders of the license or permit that a hearing will be held at a designated hour at the City Hall to hear evidence and take testimony relative to the facts and circumstances surrounding the suspension or revocation; and a decision shall be rendered by the mayor, or his designated hearing officer, regarding the reinstatement, the impositions of fines, and/or the permanent revocation of the suspended or revoked license or permit within five (5) business days following the hearing. Suspension or revocation of a license or permit may be in addition to any fine imposed under other provisions of this code. If the mayor, or designated hearing officer, fails to take steps to hold a hearing, the suspended or revoked license or permit shall be automatically reinstated following the period of the initial suspension. The temporary suspension shall take effect the day following the receipt by the licensee or permittee of a letter sent from the office of the mayor by certified mail setting forth the reasons for the suspension and the period of such suspension. Notices for hearing shall be sent by the office of the mayor by certified mail to the licensee or permittee. The notices required under this section may be made by personal delivery to the licensee or permittee with an acknowledgement of receipt by the licensee or permittee. (Ord. 3203 § 2, 2008: prior code § 5-1-12) (Bold Text added)(*Italics added*).

Only the highlighted portion of subsection (C) has procedural aspects remotely related to this case:

Within three (3) days after the **suspension period of the license or permit *has expired***, or within ten (10) days of the initial revocation of the license or permit, the mayor, or his designated hearing officer, shall give notice to the holder or holders of the license or permit that a hearing will be held at a designated hour at the City Hall to hear evidence

13

and **take testimony relative to the facts and circumstances surrounding the suspension or revocation**…

In this case, there is no license suspension period or revocation. There is also no expired or revoked permit. Nonetheless, Section 5-02-065 states that an appeal can be taken. Was the city required to give written notice of the denial of the business application as for delinquent taxes under 5-02-065?

Common sense says that the city should be giving written notice of the granting, rejection or denial of business applications and a basis of the city decision so that an applicant can appeal that decision.

The city did not notify Respondent in writing of the basis for the non-renewal of its license for the April or July applications that will be discussed below. Respondent learned of the "denial" in June of its April application for incomplete identification as testified to by Ms. Allen in her discussion with a representative of Respondent that month. Respondent was also notified that it did not have a valid business license when it received the July 1st citation and then filed a second application in July of 2024. As to the completed July application, the city determined internally that Respondent was not eligible for a business license because property taxes were delinquent for several years at this location but did not notify the Respondent in writing.

Respondent was again notified that it did not have a valid business license sometime in September when Respondent reached out to the city regarding a continuing business agreement that Respondent submitted with a signature, even choosing an option of settlement. Mr. McDannold testified that he was aware in September that the Respondent did not have a valid business license. Letters sent to businesses in 2023 and 2024 were not specifically addressed to Respondent and the 2024 letter has no date but was likely sent in early 2024. Both letters were sent prior to Respondent's applications and neither give notice to Respondents about their 2024-25 business applications.

Further notice was presented to Respondent when a cease-and-desist placard was replaced on its property on or about September 5, 2024, by Inspector Sheridan. Respondent continued and continues to be open for business since before and after that date through the date of hearing.

However, the Respondent was notified several times that its license was not renewed. In June, in July, September and October and no appeal was ever sought by Respondent.

14

Respondent argues that regardless of the above, Section 5-2-120 requires written notice and a right to appeal and the failure by the city to send a written notice constitutes a due process violation. Unfortunately, case law does not support the argument that failure to do so is a due process violation.

In this case, the business license was not renewed. Respondent argues that its due process rights have been violated for failure to notify the applicant in writing that its license was not renewed. However, a license holder does not have a protected property interest in a license's renewal. *See Las Fuentes v. City of Chicago*, 209 Ill. App. 3d at 770 (1st. Dist 1991).

"Revocation of such a license must satisfy due process. There is no vested interest, however, in the renewal of a liquor license, thus nonrenewal of a license, or the denial of a new license, is not subject to due process." *See Black Knight Restaurant, Inc. v. City of Oak Forest* (1987), 159 Ill. App.3d 1016, 513 N.E.2d 109; *Two Kats, Inc. v. Village of Chicago Ridge* (1986), 147 Ill. App.3d 440, 497 N.E.2d 1314; *City of Wyoming v. Illinois Liquor Control Comm'n* (1977), 48 Ill. App.3d 404, 362 N.E.2d 1080.

These cases did not specifically address the notice status of an application, but the legal finding is applicable and as such, there is no due process violation here.

Clearly, the best practice for a municipal entity is to inform applicants in writing when an application is granted, denied or rejected as incomplete. Clearly, the best practice would be to also include information as to the basis of that determination and how that determination can be appealed. City ordinance states that there is an appeal process in limited circumstances. The city should inform applicants of its decision and appeal rights. It would also behoove the city to amend 5-02-120 to delineate how an appeal works for the nonrenewal of a business license. The ordinance section above does not provide any guidance on how that appeal would work.

If such a process was in place here, it would have saved many hours of litigation in this matter and allow the city to better inform applicants of the status of their application. However, with all that said, the city's failure to do so does not constitute a due process violation.

Lastly, Respondent has been on notice since sometime in September that the basis of the most recent denial was for unpaid and delinquent property taxes pursuant to Section 5-02-065 and has yet to file an appeal.

**Section 5-02-010**

Respondent next argues that the April application was a *completed application* filed in a timely manner and the city failed to act within 30 days and asserts that according to city ordinance 5-02-010, the prior license continues to be valid and in effect. City of Harvey Ordinance Section 5-02-010 **Applications**, states:

> Applications for all licenses and permits shall be made in writing to the clerk in the absence of a provision to the contrary. Each application shall state the name of the applicant, the permit or license desired, the location to be used, if any, the time covered, and the fee to be paid; and each application shall contain such additional information as may be needed for the proper guidance of the officials in the issuing of the permit or license applied for, and no permit or license shall be issued until the applicant shall have furnished all information requested by the clerk or other official and all other provisions of this code in respect thereto have been complied with. *Business license applicants shall apply for their license renewal applications and provide* **all required information and fees** *annually* **by April 30th**. **If complete information is provided**, *the city will act on the license applications within thirty (30) days.* **If the city fails to act on a completed license renewal application within thirty (30) days, the license will continue in effect until the city acts on the license renewal application**. (Ord. 3454 § 1, 2022; prior code § 5-1-1) (*Italics added.*)(Bold type added.)

There is no written record as to why the April application was denied. Testimony provided demonstrates that the basis was because the application was incomplete. Although Ms. Allen has no recollection of an application in April, clearly one was sent and received. Respondent has a record of the delivery of that application and Plaintiff's witness, Ms. Allen signed for it. There was a subsequent conversation about the business license between Ms. Allen and a representative of Respondent in June of 2024. Ms. Allen testified to that conversation and that identification was not included in the application. Although she had no recollection of the identity of the representative, her testimony on this point is credible and unrebutted.

Further support for her testimony regarding that conversation and the status of Respondent's business license renewal is evidenced by the fact that Respondent submitted a second business license renewal application in July of 2024, signature dated July 10, 2024, with a copy of a driver's license for a Mr. Flitch. He is the Respondent's representative who signed the July application, and his title is listed as Executive VP/CFO.

16

Clearly the Respondent knew that their April application was not granted, and a new renewal license application was required. That may or may not have been based upon the June conversation with Ms. Allen, but by July, Respondent was clearly on notice that they did not have a valid business license.

Respondent received a July 1st dated violation for operating without a business license with a hearing date set for July 24, 2024. At the time of hearing on that citation, this Hearing Officer was presiding over those administrative violations and the notes made by this Hearing Officer on the complaint set forth that the district manager for O'Reilly Auto Parts was in court and represented at that time that the application was sent in April but returned incomplete. They had filed again, and the city then moved to nonsuit the violation. (Exhibit 10).

This Hearing Officer makes notes as to what those appearing in front of him state at that time. The notes are in reference to what the District Manager represented. Regardless of those notes, Respondent had been issued a citation by the city for operating without a valid business license and filed a new application received by the city on or about July 14, 2024.

Although the notice via the June phone conversation and July citation did not take place within 30 days of receipt of the April application, this Hearing Officer finds that according to 5-02-010, the mere filing of a business application does not invoke the thirty (30) day provisions of that section.

The application must be a "completed application." Respondent's Exhibit 17 is a copy of its April application. Respondent attached to this application a copy of the same Executive VP/CFO driver's license for Mr. Flitch. Yet he did not sign the April application nor is his name mentioned in the group exhibit anywhere.

The application is signed by someone whose name appears to be Meadows with a title of Business License Coordinator and no identification was attached for that person. Mr. Flitch did not testify on behalf of Respondent in this matter. His testimony as to why he submitted a second application for Respondent would have explained much in this case. He did sign the second application, and his identification was included with the application.

The City of Harvey's Ordinances do not define "complete." However, Black's Law Dictionary defines "complete" as a term that means "*something is full or finished and is not lacking in any way and is a complete copy…*" while Merriam-Webster dictionary defines complete as *"having no deficiency, perfect, or entire."*

17

Both definitions support the conclusion that the April application was not a complete application. Neither definition supports Respondent's argument that because the city did not act on its April application within 30 days, under Section 5-2-010, the 2023-24 license should automatically stay in effect until such time that the city does act. There is no evidence that a completed application was submitted to the city by Respondent. The only evidence is that an incomplete application was delivered in April, and a second complete application was submitted in July, well after the April 30th deadline in the ordinance.

The testimony that was presented along with the exhibits demonstrate that the identification of Meadows was not provided in the April application (Exhibit 17). Meadows being the person who signed and submitted it and as such it was not a completed application.

Therefore, Respondent's 2023-24 is not in effect and expired on April 30, 2024.

**Eighth Amendment Argument**

Respondent also argues that fines the city is seeking in this matter are excessive and violate the Eighth Amendment of the United States Constitution. Respondent has offered no basis as to why this daily fine set by municipal ordinance is excessive. Setting that aside, this Hearing Officer finds that the argument is unsupported. The U.S. Supreme Court has held that "[a] fine is considered excessive 'if it is grossly disproportional to the gravity of a defendant's offense.'" *United States v. Bajakajian*, 524 U.S. 321, 118 S. Ct. 2028 (1998).

There is no evidence that a daily fine during the period of violation is grossly disproportional to the violation of not having a valid business license. In this case, the city's code provisions serve a legitimate interest. The City of Harvey has a legitimate interest in securing compliance with ordinances through penalties. Even aggregating the fines does not give rise to a violation of the Eighth Amendment. Here, the Respondent ignores that all of the potential fine amounts are based on a per-offense, per-day penalty after numerous disclosures that Respondent did not have a valid license to operate its business. Most importantly, it is Respondent who controls the extent of those fines.

Here, the city is not seeking daily fines of $2500 from when Respondent's representative was made aware in June that its application was not granted, and it did not have a business license but continued to operate. Nor is the city seeking fines from when Respondent's representative

was notified after receiving a citation for operating without a license in July. The city is seeking fines from the date of September 5, 2024, through the date of hearing.

As such, there is no Eighth Amendment violation in this case.

### Conclusion as to Operating Without a Valid Business License

The evidence demonstrates that employees and/or agents of Respondent knew that by June its application was incomplete and was not granted. The evidence is that by July, Respondent by filing a new application by its Vice President and Chief Financial Officer knew that it did not have a valid business license but continued to conduct business without a valid license.

The evidence proves that clearly by September 16th when Respondent submitted the continuing business agreement and conducted settlement conversations with the city and by Mr. McDannold's own testimony, that Respondent knew it did not have a valid business license but continued to operate.

The evidence demonstrates that the city has proven this violation by a preponderance of the evidence. There is a finding of liable for this violation.

### Fines as to Operating Without a Valid Business License

The city is seeking fines from the date of September 5th through October 23, 2024. However, there is no testimony beyond October 7, 2024. That is the last date that Inspector Sheridan appeared at the store and that he testified he observed, it was open and conducting business. Each and every time he visited the business from September 5, 2024 and afterwards, it was open and conducting business without a valid business license.

However, there is no testimony that the Respondent was conducting business after October 7th. It is likely that the business was open and conducting business but there is no evidence by testimony or exhibits that it has conducted business in violation of city ordinance since after October 7, 2024. As such, fines will be imposed from the date of September 5, 2024, through and including October 7, 2024.

The city addresses fines and penalties in its Section 5-02-170 **Penalties for operating without a license or in violation of municipal code.** That section states:

> A.   Every person who operates a business without a license as
> required by this chapter, or who opens a business for the purpose of

operating a business, shall be fined not less than two hundred fifty dollars ($250.00) and not more than two thousand five hundred dollars ($2,500.00) for each day he operates such business without a license, or if the door is opened for the purpose of operating a business. This penalty shall be in addition to any other penalty provided under the municipal code.

The city is seeking a fine of $2500.00 per day for each day of violation. This hearing officer finds that the requested fine amount is authorized under the ordinance and is not excessive as discussed above.

### Removal of Placard

Inspector Sheridan testified that when he visited the property on October 7, 2024, the cease-and-desist placard had been removed. He placed new ones on the front and rear doors at that time. The placard clearly notified the business owner that they could not conduct business. The Respondent continued to conduct business at the site before and after learning that it did not have a valid license and before and after the posting of the first placard at the property. The evidence is that more likely than not, the Respondent through one of its agents and/or employees removed that placard while it continued to defy the order from the city.

### Conclusion as to Removal of Placard

Section 15-02-010 **Codes adopted**, sets forth that the removal of a placard is a violation under the city code pursuant to  PM 108.4.1, **Removal of Placards** and carries a fine of $500. Respondent is liable for violating the above section and code and is liable for the set fine amount.

## II.    **ORDER**

This matter having been fully briefed, and this Hearing Officer being fully appraised of the facts,

law, and premises contained herein, it is ordered as follows:

A.      Respondent O'Reilly Auto Parts is **LIABLE** for operating without a valid business license for a period beginning on September 5, 2024, through and including October 7, 2024, for a period of 33 days at $2,500.00 (Two thousand, five hundred dollars) per day. Respondent is **fined $82,500.00 (**Eighty-Two thousand, five-hundred dollars).

B.      Respondent O'Reilly Auto Parts is **LIABLE** for removal of the cease-and-desist placard and is **fined $500.00** (Five-hundred dollars).

C.      This is a **FINAL AND APPEALABLE** order.

**Date:** November 25, 2024

**ENTERED:**

James M. McGing
Administrative Hearing Officer
City of Harvey

21