**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| O'REILLY AUTO ENTERPRISES, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Court No: 2024-cv-09274 |
| | ) | |
| CITY OF HARVEY, ILLINOIS; | ) | **JURY TRIAL DEMANDED** |
| CHRISTOPHER J. CLARK; and | ) | |
| CAMERON BIDDINGS; | ) | The Honorable Manish S. Shah |
| | ) | |
| Defendants. | ) | |

## PLAINTIFF'S RESPONSE BRIEF IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

Plaintiff, O'REILLY AUTO ENTERPRISES, LLC ("O'Reilly"), by counsel, and for its response in opposition to Defendants' motion to dismiss, states as follows:

### BACKGROUND

Defendants filed a motion to dismiss pursuant to Rule 12(b)(6), contending that pursuant to the *Younger* abstention doctrine the Court should dismiss counts I, II and IV of O'Reilly's First Amended Complaint. [DE 35] at 4-7. Additionally, Defendants argue that Counts I, II and IV should be dismissed because "plaintiff cannot establish the elements required to obtain injunctive relief." *Id.* at 7-11. Defendants argue that Count III should be dismissed for purportedly failing to allege the factors required to establish a regulatory taking. *Id.* at 12-14. Lastly, presuming that the Court will dismiss Count I-IV, Defendants argue that the Court should decline to exercise supplemental jurisdiction over O'Reilly's state law claims pled in Counts IV-VI of the First Amended Complaint. O'Reilly shall address each of defendants' arguments in turn.

1

**STANDARD OF REVIEW**

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint for failure to state a claim upon which relief may be granted. *GE Capital Corp. v. Lease Resolution Corp.,* 128 F.3d 1074, 1080 (7th Cir.). To survive a Rule 12(b)(6) motion to dismiss, the complaint must provide a short and plaint statement of the claim showing that the pleader is entitled to relief such that the defendant is given "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Towmbly,* 550 U.S. 544, 555 (2007). The factual allegations in the complaint must be sufficient to raise the possibility of relief above the "speculative level," assuming that all of the allegations in the complaint are true. *E.E.O.C. v. Concentra Health Svcs., Inc.,* 496 F.3d 773, 776 (7th Cir. 2007). The Court accepts as true all of the well-pleaded facts alleged by the plaintiff and all reasonable inferences that can be drawn therefrom. *Id.*

**FACTS ALLEGED IN FIRST AMENDED COMPLAINT**

O'Reilly operates a retail business as a tenant at a property located at 14921 Dixie Highway, Harvey, Illinois, a shopping center with multiple units (the "Property"). FAC [DE 13] ¶¶ 8-10. O'Reilly leases a unit in the Property from its owner Harvey Shopping Center, LLC (the "Landlord"). *Id.* at ¶¶ 11-12. The owner—not O'Reilly—is responsible for paying property taxes on the entire Property. *Id.* at ¶ 13.

Since at least 2014, O'Reilly annually applied for and received valid business licenses from the City of Harvey. *Id.* at ¶ 18. On May 23, 2023, the City of Harvey issued O'Reilly a valid business license, signed and certified by Mayor Clark, which would expire April 30, 2024 (the "2023-2024 Business License"). *Id.* For each of the prior years, O'Reilly submitted its business license renewal applications to Harvey by UPS, which Harvey always accepted. *Id.*

On or about April 25, 2024, before the expiration of the 2023-2024 Business License, O'Reilly timely applied for renewal of its license with the proper authority of Harvey. *Id.* at ¶ 19. O'Reilly sent the renewal application and a check for all renewal fees by UPS and the City of Harvey signed an acknowledgment that it received the UPS delivery of the renewal application. *Id.* Section 5-02-010 of the Harvey Municipal Code provides that the City "will act on the license applications within thirty (30) days" and "[i]f the city fails to act on a completed license renewal application within thirty (30) days, the license will continue in effect until the city acts on the license renewal application." *Id.* at ¶ 20. O'Reilly's license renewal application provided all information and fees required by Section 5-02-010 of the Harvey Municipal Code and Harvey never acted on O'Reilly's license renewal application. *Id.* at ¶ 21. At the time that O'Reilly filed its First Amended Complaint, Harvey never informed O'Reilly that its application to renew its business licenses was denied, or that its business license was suspended or revoked for any reason. *Id.* Therefore, pursuant to Section 5-02-010, O'Reilly's business license remained valid and in effect at all relevant times. *Id.* at ¶ 21.

On or about July 1, 2024, O'Reilly received a citation from the City of Harvey alleging that O'Reilly was operating without a business license in violation of Section 5-02-170 of the Harvey Municipal Code. *Id.* at ¶ 23. O'Reilly contacted Harvey and advised that it had timely submitted its renewal application by UPS. *Id.* A representative of Harvey informed O'Reilly that the application had to be hand delivered to City Hall and asked O'Reilly to resubmit its application and payment for fees. *Id.* On July 12, 2024, a representative for O'Reilly hand delivered a new license renewal application with complete information as required by Section 05-02-010 and paid the total amount of $765.79 for fees due. *Id.* at ¶ 24. Harvey informed O'Reilly that it would receive its business license in the mail. *Id.* However, Harvey again failed to act on O'Reilly's

3

business renewal application, and therefore, under Section 5-20-010 of the Harvey Code, O'Reilly's 2023-2024 business license remained valid and in effect. *Id.* On July 24, 2024, O'Reilly attended a hearing where a representative for Harvey confirmed that O'Reilly cleared up its business license issue by resubmitting its application and payment and that O'Reilly's business license was therefore clear and valid. *Id.* at ¶ 25.

On or about September 12, 2024, O'Reilly received another citation from Harvey alleging that O'Reilly was operating without a business license and scheduled a hearing on October 23, 2024. *Id.* at ¶ 26. Before O'Reilly could even be heard on the September 12, 2024 citation, Mayor Clark emailed O'Reilly demanding as a condition for O'Reilly's maintaining its business operations in Harvey that O'Reilly enter into an agreement with Harvey under which it was to pay Harvey $20,000 as a fine—not as payment—for delinquent property taxes owed by the Landlord for the entirety of the Property. *Id.* at ¶ 27. O'Reilly objected and on September 30, 2024, without any prior notice, the Harvey police, at the direction of defendants Clark and Biddings, placed locks on all units on the Property and placed concrete blocks in front of the Store, and stationed a patrol outside of each unit, preventing all ingress to and egress from each unit, including O'Reilly's store. *Id.* at ¶ 29. As a result of Defendants' conduct, O'Reilly was unable to access or conduct business in its Store and O'Reilly, therefore moved this Court for a temporary restraining order ("TRO"), which the Court granted on October 3, 2024, ordering Defendants "to remove the barriers it placed at [O'Reilly's] premises". [DE 10]. Despite numerous requests from O'Reilly on October 3, 2024 for Harvey to remove its barriers, Harvey did not remove the barriers and comply with the TRO until October 4, 2024. FAC [DE 13] at ¶ 30. Later in the evening on October 4, 2024, Harvey placed a "Cease and Desist Order" on the front door of O'Reilly's store wrongfully alleging that

4

O'Reilly "is in violation of the City of Harvey's Municipal Code and has been closed by the planning department." *Id.*

On October 15, 2024, O'Reilly filed its amended complaint alleging defendants deprived O'Reilly of due process under 42 U.S.C. § 1983 (Count I); alleging that Section 5-02-065(A)(2) violates the Eighth and Fourteenth Amendments to the Constitution of the United States, as Harvey is taking punitive action against O'Reilly by demanding that O'Reilly pay a fine for delinquent property taxes that O'Reilly had no duty to pay and which included units that it has no right to occupy (Count II); alleging a regulatory taking without just compensation (Count III); alleging violation of the Illinois Constitution (Count IV); Conversion (Count V); and Tortious Interference with Prospective Economic Advantage (Count VI).

## ARGUMENT

### I. The Extraordinary Remedy Of Abstention Is Not Warranted

Initially, Defendants improperly cite Rule 12(b)(6) as the basis for seeking dismissal of Counts I, II and IV under the *Younger* abstention doctrine. A motion to dismiss based on an abstention doctrine implicates the Court's exercise of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1). *See O'Keefe v. Schmitz,* 20214 U.S. Dist. LEXIS 48313 *3 (E.D.Wis. Apr. 8, 2014). As such, the Court may look outside the pleadings and consider extrinsic materials in making its ruling. *Id.* In this regard, the Court can consider the extensive briefing and argument for Plaintiff's motion for preliminary injunction, which Plaintiff filed on October 31, 2024. *See* [DE 17-18]. Defendant responded and argued, *inter alia,* that the Court should abstain from exercising its jurisdiction pursuant to the *Younger v. Harris,* 401 U.S. 37 (1971). *See* Def.'s supp. resp. in opposition to pltf.'s mot. for preliminary injunction [DE29]. In reply, Plaintiff argued that the extraordinary remedy of abstention is not warranted in this action. *See* [DE31]. Plaintiff's motion

for preliminary injunction was fully briefed and the court heard oral argument on plaintiff's motion for preliminary injunction on December 18, 2024 [DE 28] and January 30, 2025 [DE34] and took the matter under advisement.

Defendants' motion to dismiss largely repeats the arguments that defendants made in response to Plaintiff's motion for preliminary injunction. *See* Def.'s Supp. Resp. to Pltf.'s Mot. for Preliminary Injunction [DE 29]. Plaintiff adopts by reference and incorporates its arguments in its reply brief in support of its motion for preliminary injunction. *See* [DE 31]. As Plaintiff argued in its reply brief, *Younger* abstention is not warranted where (i) Defendants' actions against O'Reilly have been pursued in bad faith [*See* DE 31 at 8-11], Section 5-02-070 of Harvey's code is flagrantly and patently violative of express constitutional provisions [*see* DE 31 at 11-15], and (iii) "Extraordinary Circumstances" or "Unusual Situations" exist that warrant this Court's intervention. [*See* DE 31 at 15].

Additionally, during oral argument on January 30, 2025, the Court asked the parties whether the Seventh Circuit's analysis in *Mulholland v. Marion County Election Bd.,* 746 F.3d 811, 815-816 (2014) was applicable to the Defendants' *Younger* abstention argument. Plaintiff agrees that, like in *Mulholland*, the process by which Defendants improperly shut down O'Reilly's business, denied O'Reilly's business license without proper notice or opportunity to appeal and proceeded to impose fines against defendant for operating its business does not constitute a state proceeding of the type that warrants *Younger* abstention. *See Mulholland,* 746 F.3d at 815-816.

In *Mulholland,* the plaintiff filed a federal complaint seeking to enjoin the Marion County Election board from enforcement of its anti-slating statute and from further proceedings to prosecute the plaintiff for allegedly violating that statute. *Id.* Before filing the federal lawsuit, the plaintiff sued the Election board in state court seeking the same injunctive relief. *Id.* Like here, the

6

defendant argued that the filing of the state court complaint to review the administrative procedure required the federal court to abstain pursuant to *Younger* and the district court agreed and dismissed the case. *Id.* at 815. The Seventh Circuit reversed finding that the proceedings by the Election Board did not constitute the type of civil enforcement proceedings that are close enough to a criminal prosecution to warrant *Younger* abstention. *Id.* at 816. The Court explained how the Supreme Court's recent decision in *Sprint Communs., Inc. v. Jacobs,* 134 S. Ct. 584, 588 (2013) narrowed the scope of the *Younger* abstention doctrine, as follows:

> "In our review under *Younger,* Mulholland's state suit plays no role. Such parallel requests for relief by the same party are not subject to *Younger* abstention. We focus instead on the proceedings before the Board. *See Sprint,* 134 S. Ct. at 591-92 (fact that federal plaintiff also sought state court review of agency decision did not itself implicate *Younger,* proper focus was on the agency proceeding); *New Orleans Public Ser., Inc. v. Council of City of New Orleans,* 491 U.S. 350, 369 (1989)(same)
>
> \*\*\*
>
> As the unanimous Court explained [in *Sprint*], the "three *Middlesex* conditions recited above were not dispositive; they were, instead, *additional* factors appropriately considered by the federal court before invoking *Younger. Sprint,* 134 S. Ct. at 593. These factors remain relevant, but the critical consideration in evaluating a state civil proceeding is how closely it resembles a criminal prosecution."

*Mulholland,* 746 F.3d at 816.

In *Mulholland,* the Seventh Circuit concluded that the Election Board proceedings, while initiated by the government to investigate a violation of state law, did not so closely resemble criminal proceedings as to warrant *Younger* abstention. *Id.* at 817. Similarly, the City of Harvey's actions against O'Reilly (i.e., barricading its store, denying its business license without proper notice or appeal, and imposing fines) do not so closely resemble a criminal proceeding to warrant *Younger* abstention. For this reason, and for the reasons articulated in Plaintiff's reply in support of its motion for preliminary injunction [DE 31], this Court should refuse to abstain from exercising its jurisdiction.

## II. Plaintiff Has Sufficiently Pled Causes of Actions in Counts I, II and IV to Obtain Injunctive Relief and to Recover Damages

Defendants argue that Counts I, II and IV should be dismissed because Plaintiff has not pled sufficient facts to establish the elements required to obtain injunctive relief. MTD [DE 35] at 7. As an initial matter, Plaintiff does not seek only injunctive relief in Counts I, II and IV. In addition to injunctive relief, Plaintiff seeks a declaratory judgment that Defendants' actions taken under color of state law are in violation of O'Reilly's constitutional rights to due process and freedom from excessive fines (Count I and IV), a declaration that Section 5-02-065(A)(2) of the Harvey Municipal Code is unconstitutional (Count II), and to the extent that a remedy at law exists, O'Reilly prays for an award of damages sufficient to compensate O'Reilly for its losses and for punitive damages for actions taken in willful violation of O'Reilly's constitutional rights. These forms of relief are not mutually exclusive to O'Reilly's prayer for injunctive relief and a determination that O'Reilly's claims for injunctive relief are not sufficiently pled—which O'Reilly disputes—would not require dismissal of Counts I, II and IV.

### A. O'Reilly has sufficiently pled its claim in Count I for violation of due process

The Fourteenth Amendment to the U.S. Constitution provides that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amen. XIV. Procedural due process "imposes basic procedural obligations on the government—in most cases, prior notice and a meaningful opportunity to be heard—before it deprives a person of life, liberty, or property." *Manley v. Law,* 889 F.3d 885, 890 (7th Cir. 2018). "A procedural due-process violation occurs when there has been: (i) a deprivation by state action of a protected interest in life, liberty or property, and (ii) inadequate state process." *Sherwood v. Marchiori,* 76 F.4th 688, 694 (7th Cir. 2023).

As argued from the onset of this case, this case implicates O'Reilly's right to access and use the Store that it lawfully leases from the Landlord and O'Reilly's property interest in its business license. Leasehold interests are recognized as property subject to constitutional safeguards against unlawful deprivation. *See Love Terminal Partners v. United States,* 97 Fed. Cl. 355, 372 (2011) (recognizing that leasehold interests are subject to protections from municipal takings that violate the Fifth Amendment Takings Clause of the U.S. Constitution); *See also Dept. of Hous. And Urb. Dev. V. Rucker,* 535 U.S. 125, 135 (2002); *Dyson v. City of Calumet City,* 306 F. Supp. 3d 1028, 1042 (N.D. Ill 2018). Additionally, a license may constitute a property right if it is "securely and durably the licensee's" under relevant state or local law. *Reed v. Vill. Of Shorewood,* 704 F. 2d 943, 948 (7th Cir. 1983), *overr'd in part on other grounds*; *Brunson v. Murray,* 843 F.3d 698, 710-14 (7th Cir. 2016). If the license is "revocable during its term only for cause" and the law "treats a refusal to renew . . . as equivalent to revocation, entitling the licensee 'to all the protections, procedural and substantive, of the revocation process,'" then the licensee has a property right in the license. *Club Misty, Inc. v. Laski,* 208 F.3d 615, 618 (7th Cir. 2000).

Harvey's ordinances treat a business license as a property right, establishing procedural safeguards for the suspension or revocation, such as notice and a hearing. Harvey Code § 5-02-120. These procedures apply equally to denials of initial or renewal licenses. *Id.* § 5-02-065(c). It also provides that if the city "fails to take steps to hold a hearing, the suspended or revoked license or permit shall be automatically reinstated . . ." and that if the city does not act on the renewal application for 30 days, the license is effective until the city takes action. *Id.* §§ 5-02-010, 5-02-010. The ordinance also establishes the same standards for suspension/revocation and renewal and provides for a right to appeal denial of a renewal or initial application. *Id.* § 5-02-065(B). Lastly, the ordinances set forth a list of concrete criteria to qualify for the license, including minimum

insurance requirement (§ 5-02-075), not maintaining a nuisance (§ 5-02-100), and posting the license (§ 5-02-130). Based on these criteria, Harvey's ordinance creates a property right in business licenses protected by constitutional safeguards.

O'Reilly has sufficiently pled irreparable harm. "Harm is irreparable if legal remedies are inadequate to cure it," meaning "the remedy must be seriously deficient as compared to the harms suffered." *Life Spine, Inc. v. Aegis Spine, Inc.,* 8 F. 4th 531, 545 (7th Cir. 2021). Deprivations of constitutional rights alone often amount to "irreparable harm." *Feiza v. Ill. Law Enf't Training & Stds. Bd.,* 2023 U.S. Dist. LEXIS 171451, *31-32 (N.D.IL. Sept. 26, 2023), citing 11 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2948.1 (3d ed. 2023) ("When an alleged deprivation of a constitutional right is involved … most courts hold that no further showing of irreparable harm is necessary.").

Here, defendants arbitrarily and without notice terminated O'Reilly's business operations at its Store when they locked O'Reilly out on September 30, 2024 simply because O'Reilly objected and refused to pay an extortionate "fine" in the amount of $20,000—a fine imposed without notice, hearing or administrative determination and without reference to any statutory authority. Defendants eventually removed the barricades, only as long as this Court's temporary restraining order has been in place, but defendants placed a "Cease and Desist Order" on O'Reilly's business claiming that the business is being shut down and defendants continue to prosecute O'Reilly in bad faith refusing to give O'Reilly an appeal of the denial of its business license and fining O'Reilly $2,500 per day.

Defendants' argue that O'Reilly's complaint for judicial review of the November 25, 2024 administrative decision demonstrates that there is an adequate legal remedy through the state court administrative action. While this Court may take judicial notice of O'Reilly's complaint for

judicial review, the mere filing of such a complaint does not establish an adequate legal remedy through the state court that would render O'Reilly's claims in this lawsuit inadequately pled under rule 12(b)(6) and defendants cite no authority to support such a proposition. Plaintiff disputes that defendants have provided a competent, unbiased forum to address its denial of O'Reilly's business license in the first instance. *See* Pltf's reply in support of mot. for preliminary injunction [DE 31] at 8-11.[1] Moreover, Harvey's enforcement mechanism for hearing and ruling upon issues of business licenses does not allow for a disinterested, impartial tribunal and it does not matter that the November 25, 2024 administrative decision is subject to state judicial review. *See Gibson v. Berryhill,* 411 U.S. 564, 567-568 (1973); *Appalachian Power Co. v. Public Service Com.,* 614 F. Supp. 64, 71 (S.D.W.V. February 28, 1985 ("Where . . . the state regulatory body is not a disinterested, impartial tribunal, the Court may not order an abstention dismissal even though a state judicial review, de novo or otherwise, would be forthcoming at the end of the administrative proceedings"); *Trust v. Inv. Advisers, Inc. v. Hogsett,* 43 F.3d 290, 295-98 (7th Cir. 1994) ("judicial review cannot save a prior state proceeding found to be constitutionally defective."); *Ward v. Monroeville,* 409 U.S. 57, 61 (1972) ("Nor . . . may the State's . . . procedure be deemed constitutionally acceptable simply because the State eventually offers a defendant an impartial adjudication. Petitioner is entitled to a neutral detached judge in the first instance.").

Defendants cite cases where courts have found that a plaintiff's claim for money damages were sufficient to establish an adequate remedy at law barring claims for injunctive relief. But those cases are readily distinguishable. In *Bank of America, N.A. v. Cartwright,* 545 F. Supp. 3d at 673, an elder beneficiary of a revocable trust sought a preliminary injunction granting him full

---

[1] Harvey's administrative hearing officer is designated by the mayor "in his stead, to act for the mayor . . . to hear and rule upon all issues of license violations, fines, suspensions and revocations and any and all sorts as provided for in Title 5 and the city's municipal code." *See* § 5-02-120(A) of the Harvey Municipal Code.

access to the trust assets. The beneficiary argued that the bank's interference with his property rights is irreparable, but the court noted that while "[t]here is something fundamental—indeed constitutional about property rights, *see e.g.,* U.S. Const. amends V, XIV," there was "no state action here to trigger that issue and the irreparable harm finding that could follow." *Id.* at 14-15. In contrast, O'Reilly's complaint does implicate state action depriving O'Reilly of constitutionally protected property rights. Similarly, *Sampson v. Murray,* 415 U.S. 61 (1974), a case relied on by defendants involving a discharge of a probationary federal employee did not implicate state action depriving the plaintiff of property rights.

*Saeed v. City of Fairfield Police Department,* 2023 U.S. Dist. LEXIS 12321 is also distinguishable. In *Saeed*, the plaintiff received notice that his business license was revoked on September 9, 2022 and that he had 15 days to appeal, but failed to do so for over three months. *Id.* at 1. Plaintiff filed a federal action on January 15, 2023, and filed an ex parte motion for TRO (his third attempt) on January 23, 2023. *Id.* at 2. The court denied the motion because the plaintiff failed "to adequately explain why he waited over four months from the revocation of his business license to seek emergency relief". *Id.* at 5. Additionally, the court found that the plaintiff was "not seeking to preserve the status quo—which is the purpose of a TRO—as his business license has already been revoked." *Id.* Given these issues—none of which exist here—and the fact that the plaintiff presented only evidence that he has suffered monetary damages from the revocation of his business license, the Court refused to grant an emergency ex parte TRO. *Id.*

**B. Defendants' Attack On The Likelihood of Success On The Merits Is Improper Under Rule 12(b)(6) and O'Reilly's Complaint States Claims For Relief That Are Plausible On Their Face**

Defendants argue that "Plaintiff also fails to plead facts showing a likelihood of success on the merits." *See* MTD [DE 35] at 9-12. However, the establishment of a likelihood of success on

the merits, although a requirement for a *preliminary* injunction which Plaintiff has met, is not the standard for pleading claims under Rule 12(b)(6). Rather, to survive a rule 12(b)(6) motion, a plaintiff's complaint must "state a claim to relief that is plausible on its face".

O'Reilly's Eighth Amendment claim is valid as the allegations establish that O'Reilly is being punished (its business being shutdown and exposed to excessive fines) despite having **no culpability** for the landlord's delinquent property taxes. Defendants improperly cite a lease agreement (DE 35-1) and a document titled "Your Property Tax Overview" as Exhibit G (DE 35-7) and argue that these "plainly contradict" allegations in O'Reilly's complaint that O'Reilly was denied renewal of its license due to delinquent property taxes that it had "no duty to pay". DE 35 at 9-10. These documents are not part of the complaint, are not subject to judicial notice, and it is improper for defendants to ask the court to consider such documents without converting defendants' motion to a motion for summary judgment. But even if the Court could consider these documents under Rule 12(b)(6), the documents in no way contradict O'Reilly's allegations that O'Reilly had no duty to pay the delinquent property taxes. Defendants also argue that under *Towers v. City of Chicago,* 173 F. 3d 619, 625-626 (7th Cir. 1999), "personal culpability" is not factored into an Eighth Amendment gross disproportionality test. This is not correct. In *Towers* the Court found the plaintiff's culpable insofar as Chicago's impoundment ordinance provided a complete defense to the owners of vehicles who report their vehicles stolen. Failure to report a stolen car that is later used in a crime established the owner's culpability for purposes of impoundment. *See* O'Reilly's Reply ISO Mot. for Preliminary Injunction, DE 31 at 13-14.

Defendants argue that the other elements of gross disproportionality favor dismissal because it would be "patently absurd" to argue that the city suffers no harm due to commercial property taxes not being paid. *See* DE 35 at 11. Defendants are arguing with a strawman. O'Reilly

13

does not contend that the city is not harmed when commercial property taxes are not paid, nor is such an allegation necessary for O'Reilly to state a claim for relief. However, when O'Reilly has no obligation to pay property taxes to the city, the failure of a third party to make such payments cannot be grounds for punishing O'Reilly and shutting down their business.

Defendants argue that O'Reilly's due process claim fails because O'Reilly has "no protected property interest in the renewal of a business license unless "a municipal ordinance provides substantive criteria which, if met, dictate the issuance of a permit." *See* DE 35 at 11. As explained *supra* at 9-10, Harvey's ordinance provides such substantive criteria and treats renewals of business licenses as a property right.

Defendants argue that O'Reilly's procedural due process claim fails because defendants eventually gave O'Reilly a hearing on citations for allegedly operating without a business license which O'Reilly appealed to the circuit court. However, this hearing did not occur until *after* constitutional deprivations alleged in the complaint occurred, and, as argued *supra,* and in detail in O'Reilly's reply in support of its motion for preliminary injunction, the hearing did not provide an unbiased, competent forum for addressing Harvey's denial of O'Reilly's business license. As for the fact that Harvey removed the barricades, only when compelled by this court and for as long as the Court's TRO has been in effect—this does not render O'Reilly's claims for constitutional violations invalid under Rule 12(b)(6)—and Harvey persists in its "Cease and Desist Order" that it is shutting down O'Reilly's business operations.

### III. Revocation Of O'Reilly's Business License And A Permanent Shutdown Of Its Operations Constitutes A Regulatory Taking Requiring Just Compensation

Defendants argue that "the closure of its store for nearly four days" was not a regulatory taking. However, Defendants misconstrue O'Reilly's claim. Not only did Defendants barricade O'Reilly's store for four days without notice or due process and only lifted the barricade under

compulsion from this Court, Defendants also placed a "Cease and Desist Order" on the front door of O'Reilly's wrongfully alleging that O'Reilly "is in violation of the City of Harvey's Municipal Code *and has been closed by the planning department.*" FAC [DE 13] ¶ 31 (emphasis added). While O'Reilly disputes that it "is in violation of the City of Harvey's Municipal Code" and contends that the closure by the planning department is unlawful, Count III alleges that "[t]o the extent Defendants' actions described above were authorized by law, they constitute a regulatory taking requiring just compensation under the Fifth and Fourteenth Amendments to the United States Constitution." *Id.*, ¶ 52. In other words, while O'Reilly is challenging in other counts the lawfulness of Defendants' efforts to shut O'Reilly down, Count III is effectively pled in the alternative, and demands just compensation should a court of competent jurisdiction determine that Defendants' conduct in permanently shutting down O'Reilly is lawful. Accordingly, the authority that Defendants cite concerning the temporary shutdowns of business under Covid-19 orders "to promote the common good" are simply inapplicable.

In determining whether the complete shutdown of O'Reilly's business operations at the Property on the basis of the Landlord's delinquent property taxes constitutes a regulatory taking, the Court must consider the factors set forth in *Penn Cent. Transp. Co. v. New York City*, 438 U.S. 104 (1978). These include "(1) the economic impact of the regulation on the claimant; (2) the extent to which the regulation has interfered with distinct investment-backed expectations; and (3) the character of the governmental action." *Id.* at 124. As O'Reilly alleged in its complaint, it leases the Store to operate its business of selling automotive parts and services to the general public which it has done for over a decade. FAC [DE 13], ¶¶ 8-9; 18. Harvey's revocation of O'Reilly's business license solely because of the landlord's tax delinquency completely diminishes the value of O'Reilly's lease and investment-backed expectations. For purposes of rule 12(b)(6), O'Reilly has

15

pled a plausible claim in Count III. However should the court require more factual allegations, O'Reilly would seek leave to amend this count.

## IV. As Counts I, II, and III Properly State Claims Subject To Federal Jurisdiction, The Court Has Supplemental Jurisdiction Over Counts IV, V, and VI.

Plaintiff's argument for dismissal of Counts IV, V and VI is conditioned on the Court dismissing Counts I, II and III. Because, as set forth herein, Counts I, II and III state valid causes of action, the Court retains supplemental jurisdiction over Counts IV, V and VI.

WHEREFORE, for the reasons stated herein, Plaintiff O'REILLY AUTO ENTERPRISES, LLC, requests that this Honorable Court deny Defendant's motion to dismiss.

          Respectfully submitted,

          O'REILLY AUTO ENTERPRISES, LLC

          By:__/s/ Carlos A. Vera_____
              One of Its Attorneys

Joseph R. Marconi – ARDC #1760173
Carlos A. Vera – ARDC #6312461
Adam J. Sedia – ARDC #6318987
JOHNSON & BELL, LTD.
33 West Monroe Street
Suite 2700
Chicago, Illinois 60603
312.372.0770 (T)
marconij@jbltd.com
verac@jbltd.com
sediaa@jbltd.com

*Attorneys for Plaintiff,*
  *O'Reilly Auto Enterprises, LLC*

**CERTIFICATE OF SERVICE**

I hereby certify that on March 6, 2025, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all attorneys of record.

/s/ Carlos A. Vera