UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| O'REILLY AUTO ENTERPRISES, LLC,<br><br>    Plaintiff,<br><br>    v.<br><br>CITY OF HARVEY, ILLINOIS, CHRISTOPHER J. CLARK, and CAMERON BIDDINGS,<br><br>    Defendants. | No. 24 CV 9274<br><br>Judge Manish S. Shah |

MEMORANDUM OPINION AND ORDER

Plaintiff O'Reilly Auto Enterprises, LLC runs an auto parts store in the City of Harvey, Illinois. In September 2024, Harvey cited O'Reilly for operating without a business license. Harvey's mayor, defendant Christopher Clark, told O'Reilly that it could either pay a $20,000 fine for delinquent property taxes owed by O'Reilly's landlord, or O'Reilly could pay $2,500 per day. When O'Reilly protested, Harvey police officers locked O'Reilly's store, blocked it with cement barriers, and stationed a patrol outside to deny entry. I enjoined Harvey from blocking access to the store.

Meanwhile, during administrative hearings, O'Reilly challenged the constitutionality of Harvey's ordinances and actions. The hearing officer determined that O'Reilly's constitutional claims failed, and that O'Reilly was liable for $2,500 per day. O'Reilly filed an appeal with the Circuit Court of Cook County, which is pending.

O'Reilly alleges defendants denied O'Reilly due process, imposed an unconstitutionally excessive fine, and did not compensate O'Reilly for regulatory

takings. Defendants move to dismiss for failure to state a claim and under the *Younger* abstention doctrine.

I.     Background

Plaintiff O'Reilly Auto Enterprises, LLC is a nationwide retailer of auto parts. [13] ¶ 8.[1] O'Reilly leased a unit of a shopping center in the City of Harvey, Illinois, to operate a store. [13] ¶¶ 9–12, 15. O'Reilly's landlord had an ongoing dispute with Harvey over delinquent property taxes. [13] ¶¶ 12–14.

Since at least 2014, O'Reilly annually submitted its business license renewal applications to Harvey by United Parcel Service. [13] ¶ 18. In May 2023, Harvey issued O'Reilly a business license valid through April 30, 2024. [13] ¶ 18; [13-1]. In April 2024, O'Reilly mailed a renewal application to Harvey. [13] ¶ 19; [13-2]. O'Reilly did not hear back on its application. [13] ¶ 21.

In July 2024, Harvey cited O'Reilly for operating without a business license. [13] ¶ 22. Harvey informed O'Reilly that the city no longer accepted renewal applications by UPS, but only by hand delivery to city hall. [13] ¶ 23. An O'Reilly representative hand delivered a new license application with full payment and attended a citation hearing. [13] ¶¶ 24–25; [13-3]; [13-4]. During the hearing, Harvey's representative confirmed that O'Reilly cleared the issue by resubmitting its renewal application and dismissed the citation. [13] ¶ 25.

---

[1] Bracketed numbers refer to entries on the district court docket. Referenced page numbers are taken from the CM/ECF header placed at the top of filings, except in the case of citations to transcripts, which use the transcript's original page number. When a document has numbered paragraphs, I cite to the paragraph, for example [13] ¶ 1. The facts are largely taken from O'Reilly's amended complaint, [13], and evidence submitted on the parties' *Younger* abstention dispute.

2

In September 2024, O'Reilly received a second citation from Harvey for operating without a business license with a hearing set for mid-October 2024. [13] ¶ 26. Before the hearing, Harvey's mayor, defendant Christopher Clark, emailed O'Reilly and said that O'Reilly could continue operating if it paid a $20,000 fine for its landlord's delinquent property taxes. [13] ¶ 27. O'Reilly objected. [13] ¶ 28. Mayor Clark responded that O'Reilly could either pay the $20,000 fine or be fined $2,500 per day retroactively for five months. *Id.*

Without notice, on September 30, 2024, Harvey police officers locked O'Reilly's store, barricaded it with cement blocks, and stationed a patrol unit outside to prevent entry. [13] ¶ 29. O'Reilly could not access the store nor conduct business. [13] ¶ 30. O'Reilly brought this lawsuit seeking declaratory, injunctive, and monetary relief alleging that defendants deprived it of property interests without due process, imposed excessive fines, and did not compensate it for regulatory takings. [13] ¶¶ 36–37, 52. It also raised claims for state constitutional violations, conversion, and tortious interference with prospective economic advantage. [13] ¶¶ 59–60, 65–71.

On October 3, 2024, I issued a temporary restraining order, which required Harvey "to remove the barriers it placed at [the] premises that prevent[ed] [O'Reilly] from accessing its rental unit." [10] at 1–2. The next day, Harvey removed the barriers and placed a "Cease and Desist Order" on the store's front door stating that O'Reilly was "in violation of the City of Harvey's Municipal Code and has been closed by the planning department." [13] ¶¶ 30–31.

3

On October 23, 2024, a Harvey administrative officer held a hearing on the citation. [31-5], [32-2]. O'Reilly argued that Harvey's ordinances and conduct deprived it of protected property interests without due process and imposed unconstitutionally excessive fines. *See* [31-5] at 8–9, 12–15, 18–19; [32-2] at 7–8, 39–41.

About five days later, O'Reilly received a letter from Harvey stating that its business license renewal application was denied for "property taxes." [18-1]. O'Reilly contacted the hearing officer asking him to consider the renewal denial and to request a hearing on the denial pursuant to Harvey's ordinances. [31-4] at 1–2. Harvey's prosecutor responded that it was inappropriate for O'Reilly to communicate with the hearing officer, but that the city would respond separately regarding the hearing request to schedule an appropriate hearing. [31-4] at 1. Harvey has not scheduled any hearing on the application denial. *See* [44] at 6.

In November 2024, the hearing officer issued a decision rejecting O'Reilly's constitutional challenges and finding O'Reilly liable for $82,500. [31-5] at 8–9, 12–15, 18–21. O'Reilly appealed to the Circuit Court of Cook County—the appeal is pending. *O'Reilly Auto Enterprises, LLC v. City of Harvey, Illinois*, No. 2024-CH-10976, (Ill. Cir. Ct. Cook Cnty.).

Defendants move to dismiss O'Reilly's claims under the *Younger* abstention doctrine and for failure to state a claim. [35].

## II. *Younger* Abstention

Defendants argue that the *Younger* abstention doctrine requires me to decline jurisdiction over O'Reilly's constitutional claims seeking injunctive relief. [35] at 5–

4

6. Because a motion to dismiss on *Younger* grounds concerns whether a court should exercise jurisdiction over a party's claims, I construe defendants' motion under Federal Rule of Civil Procedure 12(b)(1) for lack of subject-matter jurisdiction. *See Berrada Props. Mgmt. Inc. v. Romanski*, 608 F.Supp.3d 746, 754–55 (E.D. Wis. 2022) (collecting cases); *cf. Majors v. Engelbrecht*, 149 F.3d 709, 711–12 (7th Cir. 1998). When faced with a 12(b)(1) motion, the plaintiff "bears the burden of establishing that the jurisdictional requirements have been met." *Ctr. for Dermatology and Skin Cancer, Ltd. v. Burwell*, 770 F.3d 586, 588–89 (7th Cir. 2014). While I "accept as true all well-pleaded factual allegations and draw all reasonable inferences in favor of the plaintiff," I consider evidence beyond the complaint that "has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." *Evers v. Astrue*, 536 F.3d 651, 656–57 (7th Cir. 2008).

Generally, federal courts must "abstain from taking jurisdiction over federal constitutional claims that involve or call into question ongoing state proceedings." *FreeEats.com, Inc. v. Indiana*, 502 F.3d 590, 595 (7th Cir. 2007); *see also Forty One News, Inc. v. Cnty. of Lake*, 491 F.3d 662, 665 (7th Cir. 2007) ("*Younger* abstention is appropriate only when there is an action in state court against the federal plaintiff and the state is seeking to enforce the contested law in that proceeding."). Administrative proceedings are considered "ongoing until state appellate review is completed." *See Mullen v. City of Racine*, No. 23-CV-275-PP, 2024 WL 4164782, at *9 (E.D. Wis. Sept. 12, 2024) (collecting cases). Harvey's hearing officer issued a decision on the citation in November 2024. [31-5] at 21. In December 2024, O'Reilly appealed

5

the decision to the Circuit Court of Cook County. [32-1] (complaint in *O'Reilly*, No. 2024-CH-10976, (Ill. Cir. Ct. Cook Cnty.)). O'Reilly's appeal is still pending—the proceedings are ongoing.

*Younger* requires federal courts to abstain when ongoing state-initiated civil enforcement "proceedings . . . are (1) judicial in nature, (2) implicate important state interests, and (3) offer an adequate opportunity for review of constitutional claims." *Forty One News*, 491 F.3d at 665–66. If all three factors are met, federal courts must abstain unless the plaintiff shows exceptional circumstances make abstention inappropriate, such as when a state proceeding is brought in bad faith. *See Stroman Realty, Inc. v. Martinez*, 505 F.3d 658, 662 (7th Cir. 2007); *Majors*, 149 F.3d at 711 (citing *Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 429 (1982)).

The three factors support abstention. First, the Harvey proceeding was judicial in nature. While *Younger* "was initially limited to pending state criminal prosecutions, its scope has expanded to apply to state judicial and administrative proceedings." *Forty One News*, 491 F.3d at 665. "[T]he critical consideration in evaluating a state civil proceeding is how closely it resembles a criminal prosecution." *Mulholland v. Marion Cnty. Election Bd.*, 746 F.3d 811, 816 (7th Cir. 2014). "[T]he quasi-criminal prosecution of the violation of an ordinance . . . is an adequate state proceeding for the purposes of *Younger*." *Forty One News*, 491 F.3d at 666 (collecting cases).

6

O'Reilly argues that the proceeding here was not quasi-criminal, relying on *Mulholland v. Marion County Election Board*, 746 F.3d 811 (7th Cir. 2014). In *Mulholland*, an election board investigated a violation of state election law, but the proceeding was not quasi-criminal because the board's "authority to sanction offenders [wa]s extremely limited." 746 F.3d at 817. At most, the board could recommend that a separate authority prosecute the offender. *Id.* Such possibility of future prosecution did not trigger *Younger* abstention. *Id.* In contrast, the administrative hearing officer here had the authority to, and did, determine O'Reilly's liability and impose sanctions. *See* [31-5] at 21 (imposing a $82,500 fine for operating without a business license). As a "state enforcement proceeding," the administrative hearing was "coercive" and "judicial in nature." *See Majors*, 149 F.3d at 712.

Second, the parties do not dispute that regulating business is an important state interest, nor that the Harvey proceeding and subsequent appeal implicate this interest. *See* [29] at 7; [31] at 8–11.

And third, the proceedings offer O'Reilly an adequate opportunity for review of its federal constitutional claims. O'Reilly challenged the constitutionality of Harvey's ordinances and defendants' actions in the administrative proceeding, [31-5] at 8–9, 12–15, 18; and O'Reilly has raised these claims again on appeal, [32-1] at 21–23. O'Reilly argues that it cannot raise the post-hearing denial of O'Reilly's renewal application or Harvey's failure to provide a hearing on it in the state proceeding. [31] at 8. But O'Reilly appeals under the Illinois Administrative Review Act, 735 ILCS 5/3–101, which permits O'Reilly to bring constitutional claims alongside its appeal of

7

the underlying decision. *See Stykel v. City of Freeport*, 318 Ill.App.3d 839, 850 (2d Dist. 2001) ("Illinois courts reviewing administrative decisions recognize that federal constitutional issues are not preempted by the Review Law.").

O'Reilly also submits defendant's motion to dismiss in the state proceedings, which requests the state court stay the case because the same constitutional claims are under review here.[2] [46-1] at 14–15. O'Reilly seems to argue that the request shows that even Harvey thinks a federal court should adjudicate O'Reilly's constitutional claims. *See* [46]. But defendants' request to stay does not undermine the state court's ability to review O'Reilly's constitutional claims. Defendants' request for a stay is not at odds with their request here. If I were to exercise jurisdiction over O'Reilly's claims, it could be prudent to stay one of the cases for judicial economy. *See, e.g., Health Care Serv. Corp. v. Walgreen Co.*, 2023 IL App (1st) 230547, ¶ 34 ("[A] trial court does not act outside its discretion by staying a proceeding in favor of another proceeding that could dispose of significant issues."); *GeLab Cosms. LLC v. Zhuhai Aobo Cosms. Co.*, 99 F.4th 424, 428 (7th Cir. 2024), *cert. denied*, 145 S.Ct. 1045 (2025) (a federal court may stay suit for concurrent state proceedings when the stay would promote wise judicial administration). O'Reilly has not shown that it needs federal intervention to address its constitutional claims.

---

[2] Under Federal Rule of Evidence 201(b), a court may take judicial notice of an adjudicative fact when it is "not subject to reasonable dispute." *In the Matter of Lisse*, 905 F.3d 495, 496 (7th Cir. 2018). Defendants' motion to dismiss in the state court is a public record and an appropriate subject of judicial notice. *See id.* (citing *Menominee Indian Tribe v. Thompson*, 161 F.3d 449, 456 (7th Cir. 1998; Fed. R. Evid. 901(b)(7)).

O'Reilly argues that exceptional circumstances exist requiring federal review. According to O'Reilly, Harvey's ordinance denying business licenses based on delinquent property taxes is so clearly unconstitutional that a federal court must step in. [31] at 11–15; [36] at 6. But "the facial invalidity of a statute is not itself an exceptional circumstance opposing *Younger* abstention." *Mulholland*, 746 F.3d at 818. A statute must be so "flagrantly and patently violative of express constitutional prohibitions in every clause, sentence and paragraph, and in whatever manner and against whomever an effort might be made to apply it" for it to warrant federal intervention. *FreeEats.com*, 502 F.3d at 597. The provision here is not so clearly unconstitutional. For example, a court considering a similar statute determined that "denying a license based on the applicant's tax delinquency, was a valid exercise of the Village's home-rule authority." *Vill. of Riverdale v. Am. Transloading Servs.*, 2023 IL App (1st) 230199-U, ¶ 8 (unreleased for publication in permanent law reports and subject to change until published) (discussing trial court's adjudication of the constitutionality of the ordinance, though not opining on the issue itself). The case did not involve business owners challenging the denial of licenses due to their landlord's delinquent taxes, but suggests that the ordinance may not violate constitutional rights in every application. *See FreeEats.com*, 502 F.3d at 597 n.7.

O'Reilly also argues that defendants acted in bad faith and to harass O'Reilly. *Younger* abstention is not appropriate when "the pending state proceeding was motivated by a desire to harass or is conducted in bad faith." *Id.* at 596 (citing *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 611 (1975)). A plaintiff may establish bad faith

9

by showing that a prosecution was brought without a reasonable expectation of obtaining a valid conviction, or when an administrative agency "was incompetent by reason of bias to adjudicate the issues pending before it." *Id.* at 597 n.7 (citing *Gibson v. Berryhill,* 411 U.S. 564, 577 (1973)); *Arkebauer v. Kiley*, 985 F.2d 1351, 1358 (7th Cir. 1993).

A plaintiff need not put on an entire case to prove bad faith, but the facts must "be sufficiently developed to allow the court to make a realistic assessment of [bad faith or harassment]." *Hogsett,* 43 F.3d at 297. "The *Younger* rule . . . requires more than a mere allegation and more than a 'conclusory' finding to bring a case within the harassment exception." *Arkebauer*, 985 F.2d at 1359; *see also Hicks v. Miranda*, 422 U.S. 332, 352 (1975). O'Reilly must offer "specific evidence" that shows the "prosecution was brought in bad faith for the purpose of retaliating for or deterring the exercise of constitutionally protected rights." *See Arkebauer*, 985 F.2d at 1359.

O'Reilly argues that defendants pursued it as part of a vindictive scheme to strong arm innocent business owners to pay their landlords' outstanding property taxes or be shut down without any due process. [31] at 2, 9; [36] at 6. O'Reilly's complaint does not support this theory. Taking O'Reilly's allegations as true, defendants attempted to leverage O'Reilly's power over its landlord to make the landlord pay its delinquent taxes, and O'Reilly was not the only business to receive notice that Harvey was looking at delinquent property taxes when renewing licenses. But that does not mean that defendants prosecuted O'Reilly without a reasonable

10

expectation of obtaining a valid conviction, nor that defendants were so biased that they were incompetent to adjudicate the citation.

O'Reilly provides no additional facts of a scheme, nor facts on which I could reasonably infer one. O'Reilly relies on a complaint from another case against Harvey, *Sinwelski v. City of Harvey*, No. 2024-cv-11695 (N.D. Ill.). [31] at 2. While the *Sinwelski* plaintiffs allege specific facts supporting a scheme to divert funds collected for business licenses to defendants, the allegations from a separate case are not sufficient to support an inference of bad faith here. "A lawsuit is an allegation. So pointing to other lawsuits simply establishes that other people have made accusations against [defendant]." *Arquero v. Dart*, 587 F.Supp.3d 721, 730 (N.D. Ill. 2022). The existence of another lawsuit does not support that O'Reilly itself was targeted or prosecuted in bad faith. *Cf. Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*, 631 F.3d 436, 443 (7th Cir. 2011) ("[A]llegations based on the mere filing of other lawsuits generally will not provide much in the way of plausible corroboration of a plaintiff's fraud.")

According to O'Reilly, Harvey's prosecutor "only proceeded with the prosecution of O'Reilly because O'Reilly refused Mayor Clark's demand for a $20,000 payment." [31] at 9. O'Reilly provides no support for this, and the complaint contains no allegations regarding the prosecutor's motive in pursuing the citation. *See* [13]. O'Reilly emphasizes that Harvey continues to bring citations against it. [45] at 37:6–8 (Harvey cited O'Reilly eight additional times in January 2025). Repeated citations without more also do not support harassment. *See, e.g., Collins v. Kendall Cnty., Ill.*,

11

807 F.2d 95, 99 (7th Cir. 1986) (affirming dismissal under *Younger* despite a pattern of harassment including more than 30 prosecutions, a civil nuisance suit, and searches and seizures); *Grandco Corp. v. Rochford*, 536 F.2d 197, 203 (7th Cir. 1976) (holding that "evidence of multiple prosecutions" was not "sufficient by itself to support [the] necessary inference" of bad faith and harassment).

O'Reilly also argues that Harvey's administrative hearing officer was so biased that O'Reilly was not afforded a fair forum. *See* [31] at 9. O'Reilly's only support for this argument is that Mayor Clark appointed the hearing officer to act in his stead under Harvey's ordinances. [31] at 9–10. O'Reilly alleges no facts on which I can reasonably infer that the mayor colluded with the hearing officer to prosecute O'Reilly in bad faith, to harass O'Reilly, or to prejudge the hearing. While Mayor Clark arguably had an indirect pecuniary interest in the proceeding, *see Hogsett*, 43 F.3d at 296 (discussing how a mayor's responsibility for city finances could affect a mayor's decision in proceedings that result in fines), O'Reilly offers no support that this interest ought to be imputed to the appointed hearing officer. O'Reilly does not allege that the officer had his own personal stake in the outcome of the proceeding, nor that he was improperly involved in the underlying investigation leading to the citation. Even if Mayor Clark was biased or prejudged the citation, that would "not prevent [the hearing officer] from fairly discharging his own duties as the ultimate adjudicator of the matter." *See Hogsett*, 43 F.3d at 298; *see also Withrow v. Larkin*, 421 U.S. 35, 47 (1975) (explaining the probability of bias is "too high to be constitutionally tolerable" when an adjudicator has "a pecuniary interest in the

12

outcome" or when he is the "target of personal abuse or criticism from the party before him").

O'Reilly argues that it is entitled to discovery and a hearing to address its bad faith allegations but provides no binding case law to support this. [31] at 11. When there is specific evidence of bias, further discovery may be appropriate. *See, e.g., Exxon Mobil Corp. v. Healey*, 215 F.Supp.3d 520, 523 (N.D. Tex. 2016) (finding further discovery warranted when prosecutor publicly made anticipatory remarks about the outcome of investigation into plaintiff). But the burden falls on O'Reilly to provide facts that are "sufficiently developed to allow the court to make a realistic assessment of whether the potential for bias is sufficient to warrant a federal court to step in to protect the plaintiff's procedural due process rights." *See Hogsett*, 43 F.3d at 297. While I take O'Reilly's well-pleaded allegations as true and construe them in its favor, O'Reilly has failed to allege specific facts to support a reasonable inference of bad faith and harassment. *See Crenshaw v. Supreme Ct. of Ind.*, 170 F.3d 725, 729 (7th Cir. 1999) (rejecting argument that plaintiff's mere allegations of bias and bad faith had to be construed in her favor to establish a bad faith exception).

*Younger* abstention is appropriate here. The final issue is "how to abstain from these claims; by dismissing or merely staying them." *FreeEats.com*, 502 F.3d at 600 (quoting *Majors*, 149 F.3d at 714). "The pivotal question in making this determination is whether any of the relief sought by the plaintiff in its federal action is unavailable in the state action." *Id.* If damages aren't available in the state action, "a stay is appropriate to avoid losing the plaintiff's claim to the statute of limitations without

13

adjudicating it, but where they are available, dismissal is appropriate." *Id.* (quoting *Majors*, 149 F.3d at 714).

O'Reilly does not argue that the state court is incapable of providing relief for its constitutional claims. O'Reilly seeks declaratory, injunctive, and monetary relief for alleged violations of due process, unconstitutionally excessive fines, and regulatory takings. [13] ¶¶ 33–54. O'Reilly brings the same federal constitutional claims and seeks the same relief in its state appeal.[3] [32-1] at 19–23. Because the state court is "empowered to award both equitable and monetary relief, *Younger* oblige[s] [O'Reilly] to make all of [its] arguments there." *See Nelson v. Murphy*, 44 F.3d 497, 502 (7th Cir. 1995), *cert. denied*, 516 U.S. 1027 (1995). Dismissal without prejudice of O'Reilly's federal constitutional claims is appropriate here.[4]

Because O'Reilly's federal claims are dismissed, I decline to exercise jurisdiction over its state-law claims. *See Dietchweiler v. Lucas*, 827 F.3d 622, 631 (7th Cir. 2016) (explaining jurisdiction over state-law claims is generally relinquished when all federal claims are dismissed at early stages); 28 U.S.C. § 1367(c)(3).

---

[3] O'Reilly does not explicitly bring a claim for regulatory takings in its state-court appeal, but it seeks relief for the alleged violation of O'Reilly's constitutional right "to conduct its business activities without unreasonable government interference." [32-1] at 23; [13] ¶¶ 50–54. It is also not prevented from bringing such a claim. *See Stykel*, 318 Ill.App.3d at 850.

[4] Dismissals for lack of subject-matter jurisdiction are necessarily without prejudice. *Lauderdale-El v. Indiana Parole Bd.*, 35 F.4th 572, 576 (7th Cir. 2022).

## III. Conclusion

Defendants' motion to dismiss, [35], is granted. Plaintiff's motion for a preliminary injunction, [17], is moot. The case is dismissed without prejudice. Enter judgment and terminate civil case.

ENTER:

                                         Manish S. Shah
                                         United States District Judge

Date: May 14, 2025